408 S.E.2d 346

**Robert F. DEVRNJA, M.D., Appellant Below, Appellant,**

**v.**

**WEST VIRGINIA BOARD OF MEDICINE, Appellee Below, Appellee.**

**No. 19907.**

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided July 23, 1991.

Rehearing Denied Sept. 5, 1991.

Rudolph L. di Trapano, Lonnie C. Simmons, di Trapano & Jackson, Charleston, for appellant.

Deborah Lewis Rodecker, West Virginia Bd. of Medicine, Charleston, for appellee.

PER CURIAM:

This case is before us on appeal by Robert F. Devrnja, M.D., from the November 5, 1990 final order of the Circuit Court of Kanawha County, which upheld the January 11, 1989 order of the appellee, the West Virginia Board of Medicine, revoking Dr. Devrnja's license to practice medicine and surgery in this State.

1. The term FLEX is an acronym for Federation of Licensing Boards Examination, a standard medical test.

2. W.Va.Code, 30–14–8a (1987), provided:
 "Any resident physician who has held a temporary certificate in the state of West Virginia prior to the first day of January, one thousand nine hundred eighty-seven, is entitled to apply for and obtain a permanent

On January 11, 1988, the West Virginia Board of Medicine (Board) issued a license to Robert F. Devrnja, M.D., to practice medicine and surgery in the State of West Virginia. Dr. Devrnja had previously been unable to qualify for licensure because he had failed the FLEX examination [1] on numerous occasions. However, after a lengthy hearing process, the Board concluded that it was obligated to issue Dr. Devrnja a license under W.Va.Code, 30–14–8a (1987),[2] providing for the permanent licensure of any resident physician who had held a temporary certificate in the State of West Virginia prior to January 1, 1987. W.Va.Code, 30–14–8a (1987), was repealed by the legislature in 1988. 1988 W.Va. Acts ch. 99.

On June 3, 1988, this Court issued its opinion in *State ex rel. Walton v. Casey*, 179 W.Va. 485, 370 S.E.2d 141 (1988), in which we held that W.Va.Code, 30–14–8a (1987), was null and void due to a deficiency in the titling of the section under Art. VI, § 30 of the West Virginia Constitution. On September 7, 1988, the Board, relying on our decision in *Walton*, instituted proceedings to revoke Dr. Devrnja's license.

The two sides met in a status conference on October 11, 1988, at which they agreed that there was no dispute regarding the facts. Both sides agreed that Dr. Devrnja does not meet the current requirements for medical licensure and that he was only licensed under the authority of W.Va.Code, 30–14–8a (1987), which had been declared unconstitutional in *Walton*. The parties agreed that no hearing was necessary and that they would submit the issues to the hearing examiner on legal memoranda and oral argument.

The parties stipulated that the issue to be resolved was "the effect of the decision

license. In lieu of any other requirement of law, including the provisions of article three of this chapter, the physician is entitled to apply for and obtain a permanent license by virtue of the fact that he or she has held a temporary certificate and has practiced in the state of West Virginia during the period of temporary certification."

**596**

of June 3, 1988, by the Supreme Court of Appeals of West Virginia in the case of *STATE OF WEST VIRGINIA EX REL. RONALD D. WALTON, IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE WEST VIRGINIA BOARD OF MEDICINE V. THE HONORABLE PATRICK CASEY, JUDGE, ETC., AND ENRIQUE C. MATA* combined with the effect of the West Virginia Medical Practice Act upon the license to practice medicine and surgery of the respondent." [3] This issue was submitted to the hearing examiner, who recommended that Dr. Devrnja's license be revoked. The Board accepted this recommendation and issued an order dated January 11, 1989, revoking Dr. Devrnja's license to practice medicine and surgery, effective January 14, 1989, at 12:01 a.m.

Dr. Devrnja appealed to the Circuit Court of Kanawha County. A stay of execution was granted on January 26, 1989, pending appeal in the Kanawha County Circuit Court. On November 5, 1990, the Circuit Court of Kanawha County affirmed the decision of the Board to revoke Dr. Devrnja's license.

The Board is the body empowered by the West Virginia Medical Practice Act, W.Va. Code, 30–3–1, *et seq.*, to license medical professionals and oversee the practice of medicine and surgery in this State. It is the duty of the Board to determine the qualifications of applicants for licensure to practice medicine and surgery and to issue licenses to those applicants who meet the qualifications. W.Va.Code, 30–3–7 (1980). In doing this, the Board must keep in mind the legislative findings as set forth in W.Va.Code, 30–3–1 (1980), that the practice of medicine is a privilege granted to citizens, but not a natural right, and that there is a need to protect the public interest through the licensing procedures.

As we noted in *Wallington v. Zinn*, 146 W.Va. 147, 151, 118 S.E.2d 526, 528 (1961), the State's interest in the issuance of a license to practice medicine extends beyond the initial licensing. In accord with this,

the Board is further authorized to deny licenses or to discipline licensed physicians under certain circumstances. W.Va.Code, 30–3–14(c)(1) (1986), provides that the Board may discipline a physician for obtaining or attempting to obtain a license "through known error of the Board." The possible means of discipline which the Board can employ includes revocation of the license to practice medicine. W.Va. Code, 30–3–14(i) (1986).

Dr. Devrnja primarily argues that even though the statute was found to be unconstitutional, our opinion in *Walton* should not apply to him retroactively on the basis of *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). We recognized *Chicot* in *City of Fairmont v. Pitrolo Pontiac–Cadillac Co.*, 172 W.Va. 505, 308 S.E.2d 527 (1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984), as providing an exception to the general rule, and stated in Syllabus Point 6:

"Generally, when a statute or ordinance is declared unconstitutional, it is inoperative, as if it had never been passed."

It appears that *Chicot* was a precursor to a number of United States Supreme Court cases that dealt with the retroactivity of a court opinion which has changed existing law. In the area of civil litigation, this culminated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971), where this formulation was made:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see *e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, [392 U.S. 481] 496, [88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231, 1243, (1968)], or by deciding an issue of first impression whose resolution was not

---

3. In view of this stipulation, we decline to address Dr. Devrnja's argument that the Board, as an administrative agency, lacks the power to

consider the retroactivity of *Walton*, as well as the issue of whether it could reconsider its earlier decision to issue the license.

clearly foreshadowed, see, *e.g., Allen v. State Board of Elections,* [393 U.S. 544] 572, [89 S.Ct. 817, 835, 22 L.Ed.2d 1, 20–21 (1969)]. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker,* [381 U.S. 618] 629, [85 S.Ct. 1731, 1738, 14 L.Ed.2d 601, 608 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' *Cipriano v. City of Houma,* [395 U.S. 701] 706, [89 S.Ct. 1897, 1900, 23 L.Ed.2d 647, 652 (1969)]."

Whether *Chevron* still stands is a question whose answer may be sought in the Supreme Court's more recent plurality opinions in *American Trucking Association, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), and *James Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481, (1991). We decline to unravel this tangled federal scheme because we deal with a state adjudication based on state constitutional grounds.

Our traditional rule on retroactivity in civil cases is stated in Syllabus Point 5 of *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979):

"In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions."

*See also King v. Kayak Mfg. Corp.,* 182 W.Va. 276, 387 S.E.2d 511 (1989).

Applying these standards, we extend *Walton* retroactively. First, the statute declared unconstitutional in *Walton* was of recent origin, having been enacted in 1987. It was challenged in February, 1988, when Dr. Mata, the physician involved in *Walton,* sought a mandamus against the Board in the circuit court to obtain the benefit of the statute. Shortly thereafter, we issued an original prohibition in *Walton* to prevent the circuit court's mandamus. On June 3, 1988, we issued the opinion in *Walton,* declaring the statute to be unconstitutional.

Moreover, the statute in question was a radical departure from the previous practice that required doctors, in order to obtain a permanent license, to pass the Medical Licensing Board's examination. Thus, the licensing law was not settled, nor could it be said that Dr. Devrnja, who received his license in January, 1988, slightly less than two months before the court litigation, had any settled expectation arising from a longstanding practice.

The particular statute at issue in *Walton* affected only a narrow class of physicians, i.e. those who resided in the State and held a temporary license prior to January 1, 1987. In *Walton,* we noted this particular statute was repealed by the legislature on

March 2, 1988, and that "[a]n affidavit by Mr. Walton dated April 15, 1988, states that only ten applications by former permit holders were received before its repeal." 179 W.Va. at 489 n. 11, 370 S.E.2d at 145 n. 11. Thus, the impact of *Walton*, involving few persons, was minimal, making retroactivity more likely.

Finally, we find there is a substantial public policy served in requiring physicians practicing in this State to have sufficient knowledge to be able to pass the FLEX test before they are given a permanent license.

For the foregoing reasons, we find the circuit court was correct in holding that *Walton* was retroactive so as to preclude permanent licensing of Dr. Devrnja under the invalid 1987 Act. The judgment is therefore affirmed.[4]

Affirmed.

---

**4.** For a case reflecting on some aspects of the medical licensing problems in this State, *see* *McCormick v. United States,* —— U.S. ——, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991).