432 S.E.2d 74

**Richard Lee KINCAID and Aaron Bolen, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs,**

**v.**

**R. Michael MANGUM, Sheriff of Raleigh County; Thomas Scott, Chief Correctional Officer of the Raleigh County Jail; and Paul Flanagan, Vernon Barley, and Jack MacDonald, County Commissioners of Raleigh County, Defendants.**

No. 21505.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1993.

Decided June 10, 1993.

Daniel F. Hedges, Charleston, Robert M. Bastress, Morgantown, for plaintiffs.

Steven P. McGowan, George E. Carenbauer, Steptoe & Johnson, Charleston, for defendants, R. Michael Mangum and J.R. Lilly.

Michele Grinberg, Flaherty, Sensabaugh & Bonasso, Charleston, for defendants, Paul Flanagan, Vernon Barley and Jack MacDonald.

McHUGH, Justice:

This case is before the Court upon the certified question of the United States District Court for the Southern District of West Virginia. The plaintiffs, Richard Lee Kincaid and Aaron Bolen, on behalf of themselves and all others similarly situated, are inmates in the Raleigh County Jail. The defendants are the Sheriff of Raleigh County, R. Michael Mangum; the Chief Correctional Officer of Raleigh County, Thomas Scott; and the County Commissioners of Raleigh County, Paul Flanagan, Vernon Barley, and Jack MacDonald.

## I.

The plaintiffs filed a civil rights action in the United States District Court for the Southern District of West Virginia alleging that the conditions of their confinement violated the *United States Constitution* and certain state regulations. The district court certified the case as a class action.

Eventually, the parties agreed to settle seventeen out of nineteen areas of concern raised by the plaintiffs. However, two issues remained: the overcrowding of the jail and the adequacy of the jail's outdoor exercise facilities. The plaintiffs moved for a preliminary injunction seeking relief on those two matters. The district court granted the injunction by relying on regulations issued by the West Virginia Jail and Prison Standards Commission set forth in 95 *West Virginia Code of State Rules* § 1–1.1, *et seq.*

The defendants moved for reconsideration, arguing that the regulations upon which the district court relied were promul-gated in a manner which violated the *West Virginia Constitution* and the State Administrative Procedures Act set forth in *W.Va.Code*, 29A–1–1, *et seq.*[1] Pursuant to the defendants' argument the United States District Court for the Southern District of West Virginia certified the following question to this Court by an order dated December 3, 1992:

Does the West Virginia Legislature's authorization of the 'West Virginia Minimum Standards for Construction, Operation and Maintenance of Jails' through the use of an omnibus bill, which authorized numerous legislative rules unrelated to one another, contravene:

(a) Article VI, Section 30 of the West Virginia Constitution [providing that no act may embrace more than one object];

(b) Article VII, Section 14 of the West Virginia Constitution [providing the Governor's veto power]; or

(c) Article 3, Chapter 29A of the West Virginia Code [the State Administrative Procedures Act]?

## II.

The first portion of the certified question in this case pertains to whether or not the legislature's use of an "omnibus bill" to authorize the legislative rules written by various executive and administrative agencies violates *W.Va. Const.* art. VI, § 30 which provides, in pertinent part: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title."[2] We are concerned with the portion of art. VI, § 30 which is known as the one-object or subject rule.[3] For rea-

---

**1.** Although not an issue raised by the parties, we would like to point out that "[w]hen declaratory relief is sought, ... if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the State shall also be served with a copy of the proceeding and be entitled to be heard." *W.Va.Code*, 55–13–11 [1941].

**2.** The full text of *W.Va. Const.* art. VI, § 30 reads as follows:

§ 30. No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the legislature, except such as may be passed at the first session under this Constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two thirds of the members elected to each house, taken by yeas and nays, otherwise direct.

**3.** Most states use the term "subject" rather than "object" in their constitutional provision prohibiting a bill from containing unrelated provi-

sons set forth below, we find that the use of the omnibus bill to authorize legislative rules violates the one-object rule expressed in *W.Va. Const.* art. VI, § 30.

We note that although the certified question specifically pertains to the legislature's authorization of the "West Virginia Minimum Standards for Construction, Operation and Maintenance of Jails" (hereinafter Minimum Jail Standards rule), we find that the legislature's authorization of all of the state agencies' regulations through the use of an omnibus bill to be at issue.[4]

### A.

Initially, however, a brief examination of the legislative history of the Minimum Jail Standards rule is necessary as an example of how the legislature is authorizing our state agencies' rules and regulations. Before the Minimum Jail Standards rule was introduced in the legislature, the procedures outlined in the State Administrative Procedures Act, *W.Va.Code*, 29A-1-1, *et seq.*, were followed.[5] Although the Minimum Jail Standards rule was originally introduced in 1988 as S.B. 426, *Journal of the Senate*, Second Regular Session of the 68th Legislature, February 4, 1988, p. 279, and H.B. 4345, *Journal of the House of Delegates*, Second Regular Session of the 68th Legislature, February 3, 1988, p. 316, neither of those bills made it to the floor of the Senate or of the House of Delegates. Instead, the Minimum Jail Standards rule became part of S.B. 397 when the House of Delegates amended the bill. S.B. 397 was originally introduced to authorize the Racing Commission to promulgate a rule relating to thoroughbred racing. However, after the bill was amended it was an omnibus bill which encompassed authorization for all agency rules considered that year. *Journal of the House of Delegates*, 2d Reg.Sess., March 8, 1988, pp. 1279–1313.

S.B. 397 was eventually passed on March 12, 1988.[6] *Acts of the Legislature of West Virginia*, Second Regular Session of the

sions. Millard H. Ruud, *No Law Shall Embrace More Than One Subject*, 42 Minn.L.Rev. 389, 390 (1958). Although courts have differed over the effect of the use of the two terms, some courts have defined the two terms so that in substance the two terms are identical. 1A Norman J. Singer, *Sutherland Statutory Construction* § 17.01, at 2–3 (4th ed. 1985). In fact, Millard H. Ruud stated in his article that "[b]ecause no real difference was discovered in the courts' handling of the question depending upon whether the unity requirement was stated in terms of 'subject' or 'object,' the cases are not separately treated in the . . . discussion." Ruud, *supra* at 396 (footnote omitted). Therefore, we find that the terms are synonymous since the constitutional provisions containing the terms were enacted for the same basic purpose, and we will use the terms interchangeably in this opinion.

4. We will address our authority to modify a certified question from the federal courts later in this opinion.

5. The elaborate rule-making procedures for the agencies in the Administrative Procedures Act are set forth in *W.Va.Code*, 29A-3-5 through 29A-3-9. As the plaintiffs point out, "[t]he procedures include public notice, publication of proposed rules, opportunity for public comment and/or a public hearing, agency review of public comments and/or testimony, publication of final proposed rules and of explanations for any changes."

Once the proposed rule has gone through the above procedures, then it is referred to the legislative rule-making review committee which reports its recommendation and the proposed rule to the legislature. *See W.Va.Code*, 29A-3-11 and 29A-3-12 [1986].

*W.Va.Code*, 29A-3-11 [1986] outlines the duties of the legislative rule-making review committee. Once the agency has submitted the full text of the legislative rule with any deletions or additions clearly marked, the committee reviews seven matters: whether the agency exceeded statutory authority when making the proposal; whether the proposed rule conforms with the legislative intent; whether the proposed rule conflicts with another statute or rule; whether the proposed rule is necessary; whether the proposed rule is reasonable; whether the proposed rule can be made more understandable to the public; and whether the proposed rule was promulgated in compliance with the Administrative Procedures Act. After the legislative rule-making committee reviews the rule, the committee makes a recommendation to the legislature with the committee's deletions or additions. The members of the legislature then by act may authorize an agency to adopt the rule with any amendments designated by the legislature. *W.Va.Code*, 29A-3-12 [1986].

6. It is represented that the Minimum Jail Standards rule was amended in 1989 and renumbered in the *W.Va.Code* in 1990; however, since we are only concerned with the use of the omnibus bill we will not analyze the entire legislative history of the Minimum Jail Standards rule.

68th Legislature, 1988, chapter 112. The omnibus bill authorized 44 rules of many different agencies including the Minimum Jail Standards rule.[7] The following is an excerpt from the omnibus bill concerning the Minimum Jail Standards rule: "**§ 64–2–31(20)(9). Jail and prison standards commission.** The legislative rules filed in the state register on the fifth day of November, one thousand nine hundred eighty-seven, relating to the jail and prison standards commission (West Virginia minimum standards for construction, operation, and maintenance of jails) are authorized." *Acts of the Legislature*, 2d Reg.Sess., 1988, chapter 112, at 805. Therefore, the members of the legislature did not have the actual rule before them when voting on the omnibus bill. Instead, the omnibus bill referred the members of the legislature to the state register for the contents of the rule.

Furthermore, when the agency's rule was to be amended, the omnibus bill simply referred the members of the legislature to a page and section number of the state register and explained the deletions or additions without giving the entire text of the rule. For example, the following is from a rule regarding the Attorney General:

§ 64–2–47(14)(5). `Attorney general.`

The legislative rules filed in the state register on the twenty-third day of September, one thousand nine hundred eighty-seven, modified by the attorney general to meet the objections of the legislative rule-making review committee and refiled in the state register on the twenty-fifth day of November, one thousand nine hundred eighty-seven, relating to the attorney general (administration of preneed burial contracts) are authorized with the following amendments set forth below:

On page 9, section 8.2 by striking the words 'within thirty days after the death of a contract beneficiary,' and inserting in lieu thereof the following: 'On or before the first day of January and the first day of July of each year,' and after the word 'provided' by striking the comma and inserting in lieu thereof 'after the death of any contract beneficiary during the previous six-month period[.]' *Acts of the Legislature*, 2d Reg.Sess., 1988, chapter 112, at 806–07. The text of the rules addressed in the omnibus bill are never before the entire legislature, although the legislative rule-making review committee should have the entire text before it. *See W.Va.Code*, 29A–3–11 [1986].

The defendants argue that the omnibus rules legislation, outlined above, violates the one-object rule of *W.Va. Const.* art. VI, § 30 since the omnibus bill contains many unrelated legislative regulations. The defendants point out that the fear is that the legislature will pass the omnibus bill regarding the state regulations because they agree with the majority of the regulations even if they seriously disagree with one regulation. The defendants argue that this is the evil which *W.Va. Const.* art. VI, § 30 attempts to avoid. The defendants also note that the bill does not contain the text of the many regulations which makes it more difficult for the legislators to know

---

**7.** The omnibus bill which authorizes the 44 rules is too lengthy for us to reproduce in its entirety in the text of this opinion. However, below we have quoted portions of the omnibus bill found in the *Acts of the Legislature*, 2d Reg.Sess., 1988, chapter 112, at 773–76, S.B. 397 in order to give the reader an idea of what subjects the omnibus bill encompasses:

[The omnibus bill is described as an act] authorizing the commissioner of commerce to promulgate certain legislative rules relating to the public use of West Virginia state parks, forests and hunting and fishing areas, as modified with certain amendments thereto; ... authorizing the state tax commissioner to promulgate certain legislative rules relating to appraisal of property for periodic statewide reappraisals for ad valorem property tax purposes, as modified; ... authorizing the department of natural resources to promulgate certain legislative rules relating to hazardous waste management; ... authorizing the commissioner of labor to promulgate certain legislative rules relating to the West Virginia occupational safety and health act, adoption of federal standards; ... authorizing the jail and prison standards commission to promulgate legislative rules relating to West Virginia minimum standards for construction, operation and maintenance of jails; ... [and] authorizing the insurance commissioner to promulgate certain legislative rules relating to medical malpractice annual reporting requirements[.]

what may be contained in the regulations or rules.

On the other hand, the plaintiffs argue that the bill serves one necessary governmental function: the authorization of legislative rules. Therefore, the omnibus bill only embraces one object and does not violate *W. Va. Const.* art. VI, § 30. The plaintiffs also argue that the omnibus bill poses no risk for deception because the bill must have come from the administrative agencies, have been subjected to the rigorous public comment and review requirements of the State Administrative Procedures Act, *W. Va. Code*, 29A–1–1, *et seq.*, though the defendants argue that if the legislative rule-making committee decides to amend the rule or regulation the amendment does not go through the review requirements of the State Administrative Procedures Act. See *W. Va. Code*, 29A–3–11(d) [1986]. The plaintiffs also point out that the regulations will have been individually studied by the legislative rule-making review committee in order to ensure that the regulations meet certain standards set forth in *W. Va. Code*, 29A–3–11 [1986]. Therefore, the plaintiffs contend that no further review is necessary. We will view each of the parties' contentions in light of the history of the one-object rule.

### B.

The one-subject rule can be traced as far back as the Romans. Michael W. Catalano, *The Single Subject Rule: A Check on Anti–Majoritarian Logrolling*, 3 Emerging Issues St. Const. Law 77, 79 (1990). As of 1990, forty-three states in this country have adopted some form of a one-subject rule in their constitutions. Catalano, *supra* at 80. Although the purpose of the one-subject rule has been expressed in different ways, one author has succinctly stated the general purpose of the one-subject rule:

> The primary and universally recognized purpose of the one-subject rule is to prevent log-rolling in the enactment of laws—the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.
>
> Another stated purpose for the provision is to prevent 'riders' from being attached to bills that are popular and so certain of adoption that the rider will secure adoption not on its own merits, but on the merits of the measure to which it is attached. This stratagem seems to be but a variation of log-rolling.
>
> Another purpose served by the one-subject rule is to facilitate orderly legislative procedure. By limiting each bill to a single subject, the issues presented by each bill can be better grasped and more intelligently discussed.

Millard H. Ruud, *No Law Shall Embrace More Than One Subject*, 42 Minn.L.Rev. 389, 391 (1958) (footnotes omitted). Ruud points out that it is not necessary for log-rolling to have actually occurred since the one-object rule assumes that two objects were combined in a single bill for the purpose of log-rolling. Ruud, *supra* at 448.

When debating whether or not to adopt *W. Va. Const.* art. VI, § 30 during the West Virginia constitutional convention, a member of the convention expressed the general purpose of the one-subject rule: "If you strike out this provision, you can towards the heel of a session, take any bill, whether important or not, and make it an omnibus to carry through all sorts of schemes, tacking them on as amendments." 1 *Debates and Proceedings of the First Constitutional Convention of West Virginia (1861–63)* 906 (Charles H. Ambler, et al. eds.). Clearly, the constitutional framers of this State thought it was important for the members of the legislature to be fully aware of the subject upon which they were voting. An informed legislature is even more important in modern times considering the complexity of many rules and regulations.

Although this Court has not often had the opportunity to address the one-subject rule, this Court did squarely face the one-subject rule issue in *Simms v. Sawyers*, 85

W.Va. 245, 101 S.E. 467 (1919).[8] In *Simms* this Court found that an act providing for a charter for the city of Hinton and also creating the independent school district of Hinton, embraced two separate subjects of legislation in violation of *W.Va. Const.* art. VI, § 30. The fact that both portions of the act involved the same city was not sufficient to save the act. In arriving at its conclusion this Court stated:

> Where the Legislature undertakes to legislate upon a particular subject for the accomplishment of a certain object, it is competent to embrace within one act all regulations *germane* to the subject of legislation which may be appropriate to accomplish the object sought. It is only the joining in one act of two separate subjects of legislation which is inhibited, and not the joining of many separate provisions touching one subject, and having for their object the accomplishment of one purpose.

*Id.* at 255, 101 S.E. at 471 (emphasis added).

This Court also addressed the one-object rule in *State ex rel. Brotherton* in which it found that the budget bill, which provides an expenditure plan for the operation of the government, does not violate *W.Va. Const.* art. VI, § 30 since "all appropriation matters contained therein are germane to the budgetary process[.]" *State ex rel. Brotherton v. Blankenship*, 158 W.Va.

390, 403, 214 S.E.2d 467, 477 (1975).[9] This Court did point out the limits of the use of the budget bill in *Dadisman v. Moore*, 181 W.Va. 779, 788, 384 S.E.2d 816, 825 (1988), *as modified on reh'g*, in which this Court stated that the legislature cannot amend substantive statutes with the budget bill.[10]

This Court has used the term "germane" in *Simms, supra*, and *State ex rel. Brotherton, supra*, to determine whether the one-subject rule has been violated. The term "germane" is the general test used, and it has been defined as "in close relationship, appropriate, relevant, or pertinent to the general subject." Singer, *supra* § 17.03, at 9 (footnote omitted). The problem with relying exclusively on the term "germane" to determine whether the one-object rule has been violated was pointed out by the Supreme Court of California which stated that "the [one-object] rule obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as 'government' or 'public welfare.'" *Harbor v. Deukmejian*, 43 Cal.3d 1078, 240 Cal.Rptr. 569, 582, 742 P.2d 1290, 1303 (1987), quoting *Brosnahan v. Brown*, 32 Cal.3d 236, 186 Cal. Rptr. 30, 651 P.2d 274 (1982).

Even with this background and the use of the term "germane" by this Court it is still difficult to formulate a standard which will enable us to immediately tell whether an act violates the one-subject rule.[11]

---

**8.** This Court has more frequently addressed whether the title of an act sufficiently indicates the subject matter of an act so as to be constitutional under *W.Va. Const.* art. VI, § 30. *State ex rel. Walton v. Casey*, 179 W.Va. 485, 488 n. 9, 370 S.E.2d 141, 144 n. 9 (1988).

**9.** Ruud, *supra* at 437, points out that "[i]t is not seriously argued now that a general appropriations act violates the general one-subject rule; an act making appropriations for the operation of the various departments and agencies of government deals with a single subject even though a large number of appropriation items concerning the entire range of governmental programs is included."

**10.** This Court has also addressed the one-object issue in *Elite Laundry Co. v. Dunn*, 126 W.Va. 858, 30 S.E.2d 454 (1944), in which this Court stated that the one-object rule cannot be enforced with the same rigor when an act recodifies all of the state's statutory law.

**11.** Even a review of other jurisdictions which have addressed the one-object rule does not give us a clear indication of how the case before us should be resolved. For example, the following cases have found that the one-subject rule has been violated: *Litchfield Elementary School District No. 79 of Maricopa County v. Babbit*, 125 Ariz. 215, 608 P.2d 792 (1980) (statute violated one-subject rule and could not be deemed a general appropriation bill since it provided for executive aircraft for the Department of Public Safety and a mobile dental clinic to be operated by the dental health bureau among other things); *Harbor, supra* (a bill regarding fiscal affairs only appears germane because of the excessive generality of the topic, thus, the one-subject rule is violated); *In Re House Bill No. 1353*, 738 P.2d 371 (Colo.1987) (state revenue bill covered disparate subjects such as imposition of charge against accounts of inmates for medical visits and imposition of surcharge on insurance carriers based on workers' compensa-

As Catalano, *supra* at 81, stated "[i]n determining whether a particular law violates the Single Subject Rule, the courts do not appear to use a common test. The courts have used a variety of judicially formulated tests[.]" However, we approve of the following general statement found in *Sutherland Statutory Construction:*

> If there is any reasonable basis for grouping the various matters together, and if the public will not be deceived, the act will be sustained. No accurate mechanical rule may be formulated by which the sufficiency of an act in relation to its title may be determined. Each case must be decided on its own peculiar facts.

Singer, *supra* § 17.03, at 9 (footnotes omitted). Although the statement above applies to the sufficiency of the title of an act, we think it is equally applicable to the determination of whether an act contains more than one object in violation of the one-object rule.

### C.

In the case before us, we must determine whether the use of the omnibus bill to enact all of the state regulations violates the one-subject rule. We agree that there is an argument that there is a rational basis for grouping the rules and regulations of the state administrative agencies. The grouping performs one function: the authorization of legislative rules. We do question, though, whether the topic is excessively general. However, the more important question is whether this grouping violates the very purpose of the one-subject rule. We think it does.

In modern times the rules and regulations promulgated by administrative agencies have become increasingly complex. For example, the legislative rules governing the board of coal mine health and safety address various issues such as the moving of mining equipment, longwall mining, the use of automated temporary roof supports, and unused mines. 36 *W.Va.C.S.R.* § 1–1.1, *et seq.* The legislative rules of the air pollution control commission also address various complex issues such as air pollution from coal refuse disposal areas, air pollution from manufacturing process operations, and emission standards for hazardous air pollutants. 45 *W.Va.C.S.R.* § 1–1.1, *et seq.* The danger of using an omnibus bill to pass these complex regulations is that it would be very easy for the legislative rule-making committee to amend a rule or regulation under the pressure of interested groups. The amendment would not be subject to the strict requirements of the State Administrative Procedure Act nor would there necessarily be input from the agency which is charged with the expertise in that particular area. *See W.Va.Code,* 29A–3–11 [1986].[12]

Because the legislative rules govern such important and occasionally controversial issues, we believe it is extremely important that the members of the legislature be fully aware of the new rules or changes to the existing rules when voting. Especially, since our legislature does not simply re-

---

tion insurance premiums received thus violating the single-subject rule); and *Porten Sullivan Corp. v. State,* 318 Md. 387, 568 A.2d 1111 (1990) (an act imposing ethical requirements on county council members and others and extending council's authority to impose energy and transfer taxes violates one-subject rule).

The following are cases which have found that the one-subject rule has not been violated: *State v. Wagstaff,* 161 Ariz. 66, 775 P.2d 1130 (1988), *decision approved as modified,* 164 Ariz. 485, 794 P.2d 118 (1990) (an act which concerns crimes against children, prosecution of crimes against children, and protection of children does not violate the one-subject rule); *Calfarm Ins. Co. v. Deukmejian,* 48 Cal.3d 805, 258 Cal. Rptr. 161, 771 P.2d 1247 (1989) (all provisions of Proposition 103 relate to the cost of insur-

ance or the regulation of insurance; therefore, the provisions are reasonably germane to the general purpose of the proposition); *Sunbehm Gas, Inc. v. Conrad,* 310 N.W.2d 766 (N.D.1981) (initiative tax measure involves the imposition and administration of the oil extraction tax and does not violate the one-subject rule); and *State Finance Committee v. O'Brien,* 105 Wash.2d 78, 711 P.2d 993 (1986) (a bill authorizing the issuance of bonds for various capital projects does not violate the one-subject rule).

12. *W.Va.Code,* 29A–3–11(d) [1986] does not specifically provide a mechanism for the amendments to undergo the procedures of public review, etc. outlined in *W.Va.Code,* 29A–1–1, *et seq.*

view the rules recommended by the agencies, but, instead gives our rules the same effect as statutes. *See State ex rel. Barker v. Manchin*, 167 W.Va. 155, 169, 279 S.E.2d 622, 631 (1981).

▆▆ We understand the burden that will be placed on the legislature by our holding that the use of the omnibus bill to pass our legislative rules violates the *West Virginia Constitution*. However, in *State v. A.L.I.V.E. Voluntary*, 606 P.2d 769, 778–79 (Alaska 1980) the Supreme Court of Alaska pointed out that "the question of whether the legislature might perform a task more efficiently if it did not have to follow [the constitution] is essentially irrelevant. Since [the constitution] applies, the question of whether efficiency takes primacy over other goals must be taken to have been answered by our constitutional framers." Furthermore, we have stated that:

> While the Legislature has the power to void or to amend administrative rules and regulations, when it exercises that power it must act as a legislature, within the confines of the enactment procedures mandated by our constitution. It cannot invest itself with the power to act as an administrative agency in order to avoid those requirements.

Syllabus point 2, *State ex rel. Barker, supra*. Accordingly, we hold that if there is a reasonable basis for the grouping of various matters in a legislative bill, and if the grouping will not lead to logrolling or other deceiving tactics, then the one-object rule in *W.Va. Const.* art. VI, § 30 is not violated; however, the use of an omnibus bill to authorize legislative rules violates the one-object rule found in *W.Va. Const.* art. VI, § 30 because the use of the omnibus bill to authorize legislative rules can lead to logrolling or other deceiving tactics. In the future, each agency's proposed set of rules and regulations should have a separate bill number and should include the entire text of the rules and regulations.

### D.

However, we recognize that chaos would result if we hold that all of the legislative rules are void since the omnibus bills au-thorizing the rules violate the one-object rule of our constitution. Therefore, we would like to address an issue discussed by both parties in their briefs: whether our holding regarding the omnibus bill is to be applied prospectively. However, the question of whether our holding will apply prospectively was not part of the question certified to us by the federal district court. So, first we must address whether or not we can reformulate a question certified to us by the federal district court.

▆▆ The Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* empowers this Court to answer questions certified to it from the federal courts or other state courts. The act does not specifically address the question of whether or not this Court has the power to modify the questions certified to it. However, the Supreme Court of Oregon pointed out that the majority rule is that the deciding courts have "the discretion to reframe questions and [are] not bound to answer the question as certified." *Western Helicopter Services, Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 811 P.2d 627, 633 (1991). *See Martinez v. Rodriguez*, 394 F.2d 156, 159 n. 6 (5th Cir.1968); *Meckert v. Transamerica Insurance Co.*, 742 F.2d 505, 507 (9th Cir.1984); *Walters v. Inexco Oil Co.*, 440 So.2d 268, 272 (Miss. 1983); 17A Charles A. Wright et al., *Federal Practice and Procedure*, § 4248, at 178 (2nd ed. 1988). *But see Givens v. Anchor Packing, Inc.*, 237 Neb. 565, 466 N.W.2d 771, 775–76 (1991).

Scholars have pointed out the importance of giving the deciding court the discretion of reformulating the questions certified to it:

> Regardless of the clarity of the record, facts, and issues certified, the answering court must have the power to reformulate the questions posed. Although the court should not answer questions unrelated to the case at hand, the answering court should have the same freedom to analyze the factual circumstances that it would have if the entire case were before the court. Indeed, the ability of the answering court to reshape or add to the

issues is necessary to further the goals of certification. The answering court may be best situated to frame the question for precedential value and to control the development of its laws. If state courts take offense at a poorly framed question, they may miss a genuine opportunity to settle state law on a particular point.

John B. Corr & Ira P. Robbins, *Interjurisdictional Certification and Choice of Law*, 41 Vand.L.Rev. 411, 426 (1988) (footnote omitted).

We agree with the above statement. Furthermore, we have found that "we retain some flexibility in determining how and to what extent ... [a certified question from a circuit court to us] will be answered." *City of Fairmont v. Retail Wholesale & Dept. Store Union*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980), *citing West Virginia Water Service Co. v. Cunningham*, 143 W.Va. 1, 98 S.E.2d 891 (1957). *See also Belcher v. Goins*, 184 W.Va. 395, 398 n. 2, 400 S.E.2d 830, 833 n. 2 (1990); *State Automobile Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 561 n. 5, 396 S.E.2d 737, 742 n. 5 (1990); *Gardner v. Norfolk & Western Ry. Co.*, 179 W.Va. 724, 726–27 n. 6, 372 S.E.2d 786, 788–89 n. 6 (1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989). However, we have not had the opportunity to apply this finding to questions certified under the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.*

Therefore, we hold that when a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va. Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court. Accordingly, another question must be answered. Should our holding that the use of an omnibus bill to authorize legislative rules is unconstitutional be applied prospectively?

### E.

At the outset we would like to point out that this Court has previously addressed the doctrine of retroactivity in detail in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).[13] In the case before us we are concerned with whether our holding should apply prospectively and not with the doctrine of retroactivity. However, this Court pointed out in *Bradley* "that the general principles of retroactive or prospective application of an overruling decision are essentially the same." *Bradley*, 163 W.Va. at 347, 256 S.E.2d at 887, citing *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Therefore, we will examine the analysis of this Court in *Bradley*.

As this Court pointed out in *Bradley*, the United States Supreme Court set forth the following test regarding retroactivity in the civil context:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, ... we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.... Finally, we [must] weig[h] the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'

---

**13.** Justice Miller gives a thorough analysis of the retroactivity issue in *Bradley, supra* (which involves the issue of retroactivity in a civil context), and in *Adkins v. Leverette*, 161 W.Va. 14, 239 S.E.2d 496 (1977) (which involved the issue of retroactivity in a criminal context). Justice Miller stated that this Court would not attempt to formulate a "single answer to questions that may arise on the issue of retroactivity." *Adkins*, 161 W.Va. at 20, 239 S.E.2d at 499.

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971) (citations omitted). This Court, however, formulated its own test to determine whether to extend full retroactivity in civil cases which it set forth in syllabus point 5 of *Bradley, supra:*

> In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. *Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored.* Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

(emphasis added). Although the plaintiffs correctly point out that the analysis established by *Bradley* is not directly on point since the question in the case before us does not involve overruling any prior authority, portions of the analysis can be used to help us determine whether or not our holding today should apply prospectively.

In *Bradley,* we pointed out that "[i]n any attempt to list factors, it should be stressed that not all factors always carry the same weight, for the weight of any given factor may vary with the facts of a given case." *Id.* at 349, 256 S.E.2d at 888–89. The fourth factor of the analysis outlined in *Bradley* is most applicable to the case before us. The legislative rules involve substantial public issues, and our constitutional interpretation of the use of the omnibus bill was not foreshadowed. Therefore, prospective application of our decision is favored.

Furthermore, our reasoning is consistent with the United States Supreme Court's analysis of the issue of retroactivity, although, as we pointed out in *Devrnja v. West Virginia Bd. of Medicine,* 185 W.Va. 594, 408 S.E.2d 346 (1991), we are not obligated to follow the federal scheme when we are dealing with a state constitutional question. However, we do find the reasoning of the United States Supreme Court to be persuasive on this issue. Therefore, we will examine the federal scheme.

The United States Supreme Court has "rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored.... [The United States Supreme Court has] held to the course that there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights." *Williams v. United States,* 401 U.S. 646, 651, 91 S.Ct. 1148, 1151, 28 L.Ed.2d 388, 394 (1971) (footnote omitted). Although the case before us does not involve the Bill of Rights, it does involve the interpretation of a constitutional provision.

The United States Supreme Court has made it clear that in certain circumstances a decision may be purely prospective. In *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the United States Supreme Court declined to apply its new rule to the appellants in that particular case since the appellants relied on prior law. The new rule was that once a state court answers a plaintiff's federal claim, after a district court by an abstention order

remits a party to the state court, then a district court will not rehear the case.

In *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (*Lemon II*), the United States Supreme Court again refused to make its ruling retroactive. In a previous ruling, *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (*Lemon I*), *judgment aff'd, Lemon II, supra,* the United States Supreme Court held that the reimbursements to parochial schools for secular education services violated the First Amendment's Establishment Clause. However, in *Lemon II* the United States Supreme Court permitted Pennsylvania to reimburse parochial schools for the secular education services which were completed before the Court held the reimbursements unconstitutional. The United States Supreme Court noted that "[o]ffsetting the remote possibility of constitutional harm from allowing the State to keep its bargain are the expenses incurred by the schools in reliance on the state statute inviting the contracts made and authorizing reimbursement for past services performed by the schools." *Lemon II,* 411 U.S. at 203, 93 S.Ct. at 1471, 36 L.Ed.2d at 163 (footnote omitted).

Furthermore, the United States Supreme Court has given great weight to whether prospective application of its new rule overly burdens the government's ability to carry out its function:

> In determining whether a decision should be applied retroactively, this Court has consistently given great weight to the reliance interests of all parties affected by changes in the law. See, *e.g., Cipriano v. City of Houma,* 395 U.S. 701, 706 [89 S.Ct. 1897, 1900, 23 L.Ed.2d 647] (1969) ('Significant hardships would be imposed on cities, bondholders, and other[s] connected with municipal utilities if our decision today were given full retroactive effect'). To the extent that retrospective application of a decision burdens a government's ability to plan or carry out its programs, the application injures all of the government's constituents. These concerns

have long informed the Court's retroactivity decisions. The Court has used the technique of prospective overruling (accompanied by a stay of judgment) to avoid disabling Congress' bankruptcy scheme, see, *e.g., Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 88 [102 S.Ct. 2858, 2880, 73 L.Ed.2d 598] (1982), and has refused to invalidate retrospectively the administrative actions and decisions of the Federal Election Commission, see *Buckley v. Valeo,* 424 U.S. 1, 142–143 [96 S.Ct. 612, 693, 46 L.Ed.2d 659] (1976). The Court has also declined to provide retrospective remedies which would substantially disrupt governmental programs and functions. See, *e.g., Lemon v. Kurtzman,* 411 U.S. 192, 209 [93 S.Ct. 1463, 1473, 36 L.Ed.2d 151] (1973) (*Lemon II*) ('[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful') (plurality opinion); see also *Reynolds v. Sims,* 377 U.S. 533, 585 [84 S.Ct. 1362, 1393, 12 L.Ed.2d 506] (1964) ('[U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid'); *Allen v. State Bd. of Elections,* 393 U.S. 544 [89 S.Ct. 817, 22 L.Ed.2d 1] (1969). The retrospective invalidation of a state tax that had been lawful under then-current precedents of this Court threatens a similar disruption of governmental operations. Therefore, our refusal here to retroactively invalidate legislation that was lawful when enacted is in accord with our previous determinations of how best to give effect to new constitutional decisions.

*American Trucking Associations, Inc. v. Smith,* 496 U.S. 167, 185–86, 110 S.Ct. 2323, 2334–35, 110 L.Ed.2d 148, 164

(1990).[14] In *American Trucking Associations, supra,* the United States Supreme Court found in a plurality opinion that a rule established in *American Trucking Association, Inc. v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987) that flat highway-use taxes violated the commerce clause was inapplicable to pre-*Scheiner* circumstances but was applicable to post-*Scheiner* circumstances.

■ Although we continue to recognize that there is no one rule which will answer questions regarding the issue of retroactivity in every case, we find that based on our analysis in *Bradley, supra,* and the analysis of decisions by the United States Supreme Court that when this Court issues an interpretation of the *W.Va. Const.* which was clearly not foreshadowed, and when retroactive application of the new interpretation would excessively burden the government's ability to carry out its functions, then the new constitutional interpretation will apply prospectively.

■ In the case before us, our holding that the use of the omnibus bill to authorize legislative rules violates the one-object rule found in *W.Va. Const.* art. VI, § 30 was clearly not foreshadowed. Furthermore, if we applied our holding today, it would invalidate hundreds of legislative rules which regulate many different subjects ranging from air pollution to jails. Our governmental agencies would be unable to carry out their functions. Therefore, we will apply our holding in this case prospectively.

### III.

In light of our resolution of the first portion of the certified question, we decline to address the second and third portions of the certified question.

**14.** We pointed out the following in *Devrnja,* 185 W.Va. at 597, 408 S.E.2d at 349:

Whether *Chevron* still stands is a question whose answer may be sought in the Supreme Court's more recent plurality opinions in *American Trucking Association, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148

### IV.

The certified question having been answered, this case is dismissed from the docket of this Court, and remanded to the United States District Court for the Southern District of West Virginia for proceedings consistent with this opinion.

Certified question answered.

(1990), and *James Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481, (1991). We decline to unravel this tangled federal scheme because we deal with a state adjudication based on state constitutional grounds.