506 S.E.2d 89

**Paul T. HEALY, M.D., Appellant,**

v.

**WEST VIRGINIA BOARD OF MEDICINE, Appellee.**

No. 24750.

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1998.

Decided July 10, 1998.

James E. Smith, II, Keyser, for Appellant.

Deborah Lewis Rodecker, Charleston, Attorney Appellee.

PER CURIAM: [1]

In a proceeding instituted by the West Virginia Board of Medicine (hereinafter "Board") against Paul T. Healy, M.D., the Board concluded that the medical license of Dr. Healy should be suspended for five years, such suspension being stayed upon certain conditions. The Circuit Court of Mineral County affirmed that decision, and Dr. Healy appeals, contending that the Board

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

and lower court erred in finding that he falsified medical records. We affirm the decision of the Board and the Circuit Court of Mineral County.

## I.

Dr. Healy began his practice of medicine and surgery in 1954. Mrs. Margaret Stanislawczyk became a patient of Dr. Healy in 1984 and was treated by Dr. Healy for a variety of ailments, including hypertension and frequent respiratory infections. On January 4, 1990, Mrs Stanislawczyk informed Dr. Healy that she had experienced tenderness of the right breast. Dr. Healy ordered a mammogram of both breasts, and the January 8, 1990, mammogram was interpreted by Dr. Buenventura Orbeta, a radiologist. On January 8, 1990, Dr. Orbeta contacted Dr. Healy and advised Dr. Healy that he was unable to complete the examination due to breast tenderness. Dr. Orbeta further informed Dr. Healy that he had advised Mrs. Stanislawczyk to return in three to six months for another mammogram based upon a density in her breast. Dr. Healy contends that he telephoned the patient on January 8, 1990, and confirmed Dr. Orbeta's recommendation to return in three to six months for a repeat mammogram.

Mrs. Stanislawczyk failed to return for an additional mammogram and was diagnosed with breast cancer on March 1, 1993. She subsequently underwent a mastectomy of the right breast. In April 1993, Mrs. Stanislawczyk apprised Dr. Healy of her diagnosis and questioned him regarding his failure to inform her of the results of the January 8, 1990, mammogram. Dr. Healy responded to Mrs. Stanislawczyk's question by contending that he and Dr. Orbeta had both conveyed the recommendation to her that she should repeat the 1990 mammogram within three to six months.

In October 1993, Dr. Healy received correspondence from Mrs. Stanislawczyk's attorney demanding $125,000 for the act of failing to timely diagnose the cancer.[2] On February 25, 1995, Mrs. Stanislawczyk filed a complaint with the Board, alleging that Dr. Healy had ignored a 1990 mammogram report of a possible tumor in her right breast and that he had failed to follow up to ensure that she obtained another mammogram.[3] Mrs. Stanislawczyk also contended that as a result of Dr. Healy's action, the tumor metastasized, causing her to undergo a mastectomy of the right breast.

In a March 23, 1995, response to the complaint, Dr. Healy provided "office notes" and patient medical records of his dealings with the patient, reflecting that he had contacted Mrs. Stanislawczyk by telephone on January 8, 1990. While these entries were dated 1990, they were written on stationery dated 1991 and 1993, and all the notations appeared to be written with the same pen.

On August 1, 1995, the Board issued a subpoena duces tecum to Dr. Healy for all original medical records relating to the care Mrs. Stanislawczyk. Dr. Healy once again provided the same records he had attached to the March 23, 1995, response to the complaint. On November 13, 1995, Dr. Healy appeared before the Board's Complaint Committee. When questioned with regard to the suspicious nature of the notes, Dr. Healy first reported that he used the same pen over an eleven-year period in recording the patient's information. He later admitted that he had "reassembled" the notes from the original records based upon his concern that the Board would be unable to read the original notes which were written in an unusual form of shorthand.[4]

Although the "reassembled" records indicated that he had contacted the patient after

2. Civil litigation was apparently not pursued.

3. Dr. Healy was the patient's family physician. She had a family history of breast cancer, and her mother had died of the disease.

4. Dr. Healy testified that the "reassembled" notes were actually transcriptions of his "initial medical notes, some of which were done by caricature, by drawings, etc., some of which would have probably been illegible for the aver-

age lay person to read, so by virtue of that, since the Board wanted the information, I transcribed this information from the original notes." He further testified that he didn't think the Board "would be devious enough to look at the bottom of my sheets to see what date the sheet was produced." Dr. Healy also forwarded the explanation that he used a pencil for Mrs. Stanislawczyk's records over a ten year period because he hurt his index finger on a band saw and could not hold a pen, but "could hold a pencil by

the January 1990 mammogram to advise her that a repeat mammogram was necessary, Mrs. Stanislawczyk testified that when she and her son visited Dr. Healy's office in April 1993 and asked him why he had not called her or made an appointment for a repeat mammogram, Dr. Healy had informed her that he thought the girls at the hospital would take care of that.

On September 20, 1996, the Board filed a complaint[5] against Dr. Healy, alleging that he falsified the patient's medical records to make it appear as though he had contacted her following the 1990 mammogram and that he had failed to follow up in any way on the radiographic report of the mammogram. The Board alleged that such conduct constituted a deceptive, untrue or fraudulent representation in the practice of medicine.

On January 6, 1997, the administrative law judge recommended revocation of Dr. Healy's license based upon clear and convincing evidence that Dr. Healy made a deceptive, untruthful and fraudulent representation in the practice of medicine when he provided records which purported to be his original records but were in fact records which he knew were not original records, thus violating West Virginia Code § 30–3–14(c)(9) and 11 CSR 1A 12.1(s).

On January 17, 1997, the Board adopted the findings of fact and conclusions of law of the administrative law judge, but found that the appropriate discipline would constitute a five-year suspension of Dr. Healy's license rather than the revocation recommended by the administrative law judge. The Board stayed the five-year suspension, conditioned upon the payment of a $10,000 civil fine; the payment of costs of $7667 witness fees; and upon Dr. Healy's commitment to maintain complete and current records, including telephone conversations.[6] The Board determined that random audits of Dr. Healy's patient records would be conducted, at least once in each calendar quarter.

If any audit report reflects the Respondent's failure to keep complete and current records pursuant to this Order, and if the Board thereupon determines that the Respondent failed to keep complete and current records pursuant to this Order, the STAY shall be dissolved and terminated, and the SUSPENSION shall be in effect immediately upon service upon the Respondent of the Board's determination and written notice thereof.

On March 24, 1997, the Circuit Court of Mineral County affirmed the Board's order of January 17, 1997. Dr. Healy thereafter appealed to this Court contending that the Board failed to prove by clear and convincing evidence that he falsified the records. Dr. Healy admits that he provided transcribed notes rather than the originals, but he explains that he reassembled the originals only to prevent confusion by the Board in attempting to interpret the originals written in his unusual form of shorthand. Dr. Healy emphasizes the testimony of his office nurse, Joyce Norvell, L.P.N., indicating that she was familiar with Mrs. Stanislawczyk and personally overheard Dr. Healy notify Mrs. Stanislawczyk regarding the mammogram and the necessity for a repeat mammogram.[7]

Dr. Healy also contends that the Board erred in concluding that he made a deceptive, untruthful, and fraudulent representation in the practice of medicine. Dr. Healy main-

---

reason of the fact that they are hexagonal." He also informed the Board that he had "sequestered" the patient notes in the "archives files" since Mrs. Stanislawczyk had not had an appointment for several years since the 1990 mammogram.

5.  Dr. Healy was provided an opportunity prior to the filing of charges to surrender his license to practice medicine and surgery.

6.  Specifically, the Board required Dr. Healy to "keep complete written records of all patient consultations, including telephone consultations, which shall include at least the following information: a. Complaint; b. Diagnosis: c. Examination; d. Treatment/Plan." Further, the Board required Dr. Healy to "cause all records of patient consultations, including telephone consultations, to be transcribed within a reasonable time after each consultation, a period of fifteen (15) days being a presumption of reasonableness."

7.  Although Mrs. Norvell testified that Dr. Healy maintained patient records on a "big card," such card was never produced: Mrs. Norvell testified that she was in the next room when Dr. Healy telephoned Mrs. Stanislawczyk and that she remembered this conversation vividly, even though it occurred seven years prior to Mrs. Norvell's testimony. Mrs. Norvell contended that she could hear "very, very clearly" while she and Dr. Healy's daughter were filing in the next room. Dr. Healy's daughter did not testify.

tains that the lower court erred in failing to reverse the administrative law judge's findings of fact and in affirming the extreme penalty imposed by the Board.

Subsequent to this Court's acceptance of Dr. Healy's petition for appeal, the Board, by order dated January 15, 1998, terminated the stay and reinstated the five-year suspension of Dr. Healy's license after an independent medical consultant's audits of Dr. Healy's records revealed that Dr. Healy had failed to maintain adequate and complete records as ordered in the January 17, 1997, Board order.

## II.

■ In the syllabus of *Berlow v. West Virginia Board of Medicine*, 193 W.Va. 666, 458 S.E.2d 469 (1995), we explained that the West Virginia Administrative Procedure Act, West Virginia Code § 29A–5–1, et seq., establishes the guidelines to be followed by circuit courts in reviewing decisions of the West Virginia Board of Medicine.

"Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law, or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' " Syllabus point 2, *Shepherdstown Volunteer Fire Department v. [State ex rel. State of] West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

We have also determined as follows:

[F]indings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference.... Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal.

*Modi v. West Virginia Bd. of Medicine*, 195 W.Va. 230, 239, 465 S.E.2d 230, 239 (1995) (citations omitted).

As we cautioned in *Devrnja v. West Virginia Board of Medicine*, 185 W.Va. 594, 408 S.E.2d 346 (1991), "the Board must keep in mind the legislative findings as set forth in W.Va.Code, 30–3–1 (1980), that the practice of medicine is a privilege granted to citizens, but not a natural right, and that there is a need to protect the public interest through the licensing procedures." 185 W.Va. at 596, 408 S.E.2d at 348. In a New Jersey case based upon a physician's appeal from an order of the State Board of Medical Examiners revoking his license to practice medicine and surgery, the New Jersey Supreme Court addressed the issue of tampering with a patient's medical records:

We are persuaded that a physician's duty to a patient cannot but encompass his affirmative obligation to maintain the integrity, accuracy, truth and reliability of the patient's medical record. His obligation in this regard is no less compelling than his duties respecting diagnosis and treatment of the patient since the medical community must, of necessity, be able to rely on those records in the continuing and future care of that patient. Obviously, the rendering of that care is prejudiced by anything in those records which is false, misleading or inaccurate. We hold, therefore, that a deliberate falsification by a physician of his patient's medical record, particularly when the reason therefor is to protect his own interests at the expense of his patient's, must be regarded as gross malpractice endangering the health or life of his patient.

*In re Jascalevich*, 182 N.J.Super. 455, 442 A.2d 635, 644–45 (1982).

In the case sub judice, pursuant to the standard of review applicable to decisions of the Board, we conclude that the findings of fact are not clearly wrong and that the Board clearly and convincingly proved that Dr. Healy falsified the patient medical records and made a deceptive, untruthful and fraudulent misrepresentation in the practice of medicine. Dr. Healy admitted that he did not provide original patient records when those documents were requested, he misrepresented the nature of the documents produced by informing the Board that they were original records, and he then fabricating varying explanations for the suspicious nature of the notes provided. We therefore affirm in all respects.

Affirmed.