647 S.E.2d 848

**Adda MOTTO, Marie Carey, David Carey, Kristi Carey, and Sharon Runyon, Plaintiffs,**

v.

**CSX TRANSPORTATION, INC. and West Virginia Department of Environmental Protection, Office of Abandoned Mine Lands and Reclamation, a West Virginia Government Entity, Defendants.**

No. 33205.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 14, 2007.

Decided May 24, 2007.

Dissenting Opinion of Justice Starcher June 29, 2007.

414

Bernard E. Layne, III, Lord, Lord & Layne and Letisha R. Bika, Bika Law Office, Charleston, for Plaintiffs.

Anita R. Casey, Tanya Hunt Handley, MacCorkle, Lavendar, Casey & Sweeney, PLLC, Charleston, for Defendant West Virginia Department of Environmental Protection, Office of Abandoned Mine Lands and Reclamation.

Andrew Zettle, Cindy D. McCarty, Huddleston Bolen, LLP, Huntington, for Defendant CSX Transportation, Inc.

BENJAMIN, Justice:

The instant matter comes before this Court upon an Order of Certification entered by the Circuit Court of Kanawha County, West Virginia, on May 17, 2006. In that order, the circuit court presented two questions regarding its discretion to waive the statutory notice required in actions governed by W. Va.Code §§ 55–17–1, *et seq.* (2002), and its discretion to stay proceedings for thirty days to allow for compliance with statutory provisions when an action is filed without the required pre-suit notice. The circuit court found that it had such discretion in both instances. We disagree. As explained more fully below, dismissal is mandated for the failure to comply with the pre-suit notice provisions set forth in W. Va.Code § 55–17–3(a).

1. According to the Complaint, "DEP was negligent, reckless, careless, and acted with wanton disregard in obligation and responsibilities with a certain abandoned mine located along Godby Branch Road, said mines having been permitted to remain is such a state as to allow water to accumulate in an unsafe and hazardous manner. Said mines collapsed and deposited an excessive amount of water along Godby Branch Road."

2. Although not entirely clear from the wording of the complaint, it appears that plaintiffs allege this culvert caused damming of a creek running along Godby Branch Road.

3. The text of W. Va.Code § 55–17–3(a) (2002) is set forth, *infra*, at note 9.

4. According to the certification order, DEP's motion to dismiss was originally filed in the Circuit

## I.

## FACTUAL AND PROCEDURAL HISTORY

On June 15, 2005, plaintiffs initiated a civil action in the Circuit Court of Logan County, West Virginia, against defendants CSX Transportation, Inc., (hereinafter "CSX") and the West Virginia Department of Environmental Protection, Office of Abandoned Mine Lands and Reclamation, (hereinafter "DEP"), claiming damages arising from the June 16, 2003, flooding of their property located on Godby Branch Road in Chapmanville, West Virginia. The complaint alleges that DEP improperly performed its duties with respect to an unnamed abandoned mine located along Godby Branch Road.[1] As to CSX, plaintiffs allege that it negligently, carelessly, recklessly and acting with willful disregard installed and maintained a culvert located at the base of Godby Branch Road at the road's intersection with West Virginia Route 10.[2] According to the complaint, the combined acts of DEP and CSX caused plaintiffs' property to flood on June 16, 2003.

Relying upon plaintiffs' failure to comply with pre-suit notification requirement set forth in W. Va.Code § 55–17–3(a)(1) (2002)[3], DEP immediately moved to dismiss plaintiff's claim.[4] In their response, plaintiffs admitted to failing to comply with the requirements of W. Va.Code § 55–17–3(a) and requested that the circuit court stay the proceedings for thirty days to permit compliance with statutory notice provisions.[5] In reply,

Court of Logan County. CSX subsequently removed the matter to federal court arguing that DEP was fraudulently joined. After the federal district court remanded the matter to the Circuit Court of Logan County, plaintiffs' moved for a change of venue "based on their having improperly filed in Logan County rather than Kanawha County, as required in West Virginia Code § 14–2–2." The Circuit Court of Logan County transferred the matter to the Circuit Court of Kanawha County before ruling on the pending motion to dismiss.

5. Plaintiffs also argued that compliance with statutory pre-suit notice provisions effectively reduces the two-year statute of limitations set forth in W. Va.Code 55–2–12 (1959) by thirty days. Such argument is without merit in light of the

DEP argued that compliance with statutory notice provisions is a jurisdictional prerequisite and, as such, the circuit court did not have jurisdiction to proceed in this matter against DEP.

In light of the parties' arguments, the circuit court entered its May 12, 2006 order[6] certifying the following two questions to this Court:

1. Is there discretion for the Court to waive the mandatory notice provision of West Virginia Code Sections 55–17–1 through 5 absent a showing of good cause?

2. Does the Circuit Court have discretion to stay proceedings for thirty days to allow time to comply with the provisions of West Virginia Code Sections 55–17–1 through 5 after suit has been filed before notice is given?

The certification order also indicated the circuit court's opinion that both questions should be answered in the affirmative. Thereafter, DEP petitioned this Court to review the certified questions. By order dated October 4, 2006, we granted DEP's petition.

## II.

### STANDARD OF REVIEW

■ It is well settled that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. Pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Similarly, when interpreting a statute, such as W. Va.Code §§ 55–17–1, *et. seq.*, we apply a *de novo* standard of review. *See*, Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Thus, we shall proceed *de novo* in this matter.

## III.

### DISCUSSION

■ At the outset, we note that the parties have raised an issue before this Court which was not included within the questions certified by the circuit court but which is inextricably related to our decision as to the impact of plaintiffs' admitted failure to comply with the provisions of W. Va.Code § 55–17–3(a). The parties have briefed and argued the applicability of W. Va.Code § 55–2–18 (2001) (sometimes referred to as "the Savings Statute"), to this matter in the event that this Court determined that plaintiffs' action must be dismissed for failure to comply with statutory mandates. As such, this Court invokes its authority to reformulate the certified questions in order to adequately address the dispositive issues presented. *See*, Syl. Pt. 1, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) (recognizing power of this Court to reformulate questions certified to it by the circuit courts of this State to fully address the law involved in the question). Accordingly, we reformulate the questions certified in the following manner:

1. Is compliance with the pre-suit notification provisions set forth in W. Va. Code § 55–17–3(a) (2002) a jurisdictional pre-requisite for filing an action in accordance with W. Va.Code § 55–17–1, *et seq.* (2002) against certain State entities?

2. May an action dismissed for failure to comply with the notice provisions of W. Va.Code § 55–17–3(a) (2002) be re-filed after expiration of the original statute of limitations pursuant to W. Va.Code § 55–2–18 (2001)?

Having determined that "there is a sufficiently precise and undisputed factual record on which the legal issues can be determined" and that those issues substantially control the case, we now address the issues present-

---

express provisions of W. Va.Code § 55–17–3(a)(2) which *tolls* the statute of limitations for thirty days from the date notice is provided.

**6.** The circuit court entered an amended order of certification on May 23, 2006. The amended

order did not impact the certified questions or the circuit court's answers thereto. Instead, the circuit court ordered defendants, rather than plaintiffs, to file a petition with this Court for acceptance of the certified questions.

ed. Syl. Pt. 5, in part, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994).

## A.

### W. Va.Code §§ 55–17–1, *et seq.*

In 2002, the Legislature enacted legislation entitled "Procedures for Certain Actions Against the State" (the "Act") which was codified in Article 17, Chapter 55 of the West Virginia Code.[7] The stated purpose of the Act was to enact procedures to govern claims asserted against certain state government agencies which may affect the public interest and of which the Legislature should be kept informed. W. Va.Code § 55–17–1.[8]

At issue herein are the preliminary notice procedures set forth in W. Va.Code § 55–17–3(a).[9] Under the provisions of W. Va.Code § 55–17–3(a), a party instituting an action against a government agency must provide both the agency's chief officer and the attorney general with written notice, by certified mail, of the claim and relief requested at least thirty days prior to institution of the action. The applicable statute of limitations is thereafter tolled for a period of thirty days from the date it is mailed and again from the date evidenced by the return receipt that it was received by the agency's chief officer. W. Va.Code § 55–17–3(a)(2). The Act defines the terms "action", "government agency", and "judgment" so that the procedures apply to only those claims filed in state courts seeking specific types of relief against certain executive branch agencies. W. Va. Code § 55–17–2.[10]

---

7. Neither party has raised any question regarding the constitutionality of this statutory scheme or the Legislature's ability to waive or provide an exception to the State's sovereign immunity guaranteed by Article VI, Section 35 of the *West Virginia Constitution*.

8. W. Va.Code § 55–17–1 provides:
   (a) The Legislature finds that there are numerous actions, suits and proceedings filed against state government agencies and officials that may affect the public interest. Depending upon the outcome, this type of litigation may have significant consequences that can only be addressed by subsequent legislative action. In these actions, the Legislature is not directly involved as a party. The Legislature is not a proper party to these actions because of an extensive structure of constitutional protections established to safeguard the prerogatives of the legislative branch under our governmental system of checks and balances. Government agencies and their officials require more notice of these actions and time to respond to them and the Legislature requires more timely information regarding these actions, all in order to protect the public interest. The Legislature further finds that protection of the public interest is best served by clarifying that no government agency may be subject to awards of punitive damages in any judicial proceeding.
   (b) It is the purpose of this article to establish procedures to be followed in certain civil actions filed against state government agencies and their officials.

9. W. Va.Code § 55–17–3(a) provides:
   (1) Notwithstanding any provision of law to the contrary, at least thirty days prior to the institution of an action against a government agency, the complaining party or parties must provide the chief officer of the government agency and the attorney general written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired. Upon receipt, the chief officer of the government agency shall forthwith forward a copy of the notice to the president of the Senate and the speaker of the House of Delegates. The provisions of this subdivision do not apply in actions seeking injunctive relief where the court finds that irreparable harm would have occurred if the institution of the action was delayed by the provisions of this subsection.
   (2) The written notice to the chief officer of the government agency and the attorney general required by subdivision (1) of this subsection is considered to be provided on the date of mailing of the notice by certified mail, return receipt requested. If the written notice is provided to the chief officer of the government agency as required by subdivision (1) of this subsection, any applicable statute of limitations is tolled for thirty days from the date the notice is provided and, if received by the government agency as evidenced by the return receipt of the certified mail, for thirty days from the date of the returned receipt.

10. W. Va.Code § 55–17–2 provides:

    For the purposes of this section:
    (1) "Action" means a proceeding instituted against a governmental agency in a circuit court or in the supreme court of appeals, except actions instituted pursuant to statutory provisions that authorize a specific procedure for appeal or similar method of obtaining relief from the ruling of an administrative agency and actions instituted to appeal or otherwise seek relief from a criminal conviction, including, but not limited to, actions to obtain habeas corpus relief.
    (2) "Government agency" means a constitutional officer or other public official named as a defendant or respondent in his or her official

■ In the instant matter, plaintiffs admittedly failed to comply with the pre-suit notice provision contained in W. Va.Code § 55–17–3(a). DEP argues that compliance with this provision is a mandatory prerequisite to the circuit court's ability to proceed in an action against a government agency. According to DEP, the State may set forth the parameters of any suit against it based upon sovereign immunity principles. In response, plaintiffs' argue that the Act is not applicable because they seek insurance proceeds, not funds from the State. Therefore, they are not seeking a judgment as that term is defined in the Act. They argue that the Legislature's intent in enacting the Act "appears to be financially motivated to insure that [it] can prepare for claims against the State that may have budget consequences." As any judgment recovered would be satisfied by insurance assets, not state funds, plaintiffs maintain the intent of the Act is not furthered by requiring notice in this instance.[11] We note that plaintiffs did not raise application of the Act itself before the circuit court. Rather, in their response to DEP's motion to dismiss, they argued that the notice requirement would shortcut their statute of limitations by thirty days and that the harshness of dismissal could be avoided by staying the action for thirty days to remedy the lack of pre-suit notice. The questions certified to this court assume that the Act is applicable to this action. Because plaintiffs' argument regarding the definition of "judgment" in the Act is not arguably within the scope of the questions certified to this Court, was not raised before the circuit court and does not raise constitutional issues, we decline to address it. *See, Whitlow v. Board of Ed. of Kanawha Cnty.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1990) (generally this court will not consider matters first raised on appeal); *Kincaid*, 189 W.Va. at 413, 432 S.E.2d at 83 (recognizing power of court to reformulate certified question to "address the law which is involved in the question"); *Louk v. Cormier*, 218 W.Va. 81, 87, 622 S.E.2d 788, 794 (2005) (this court possesses discretion to address controlling constitutional questions raised for the first time on appeal).

■ The primary issue before this Court is the practical effect of failure to comply with the notice provisions of W. Va. Code § 55–17–3(a)(1). Our role in interpreting a statute is well-settled. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Where the statutory language is clear and unambiguous, it should be applied as written. *See*, Syl. pt. 5, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." (internal quotations and citations omitted)); Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)( "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). W. Va.Code § 55–17–3(a)(1) clearly provides, in pertinent

capacity, or a department, division, bureau, board, commission or other agency or instrumentality within the executive branch of state government that has the capacity to sue or be sued;

(3) "Judgment" means a judgment, order or decree of a court which would:

(A) Require or otherwise mandate an expansion of, increase in, or addition to the services, duties or responsibilities of a government agency;

(B) Require or otherwise mandate an increase in the expenditures of a government agency above the level of expenditures approved or authorized before the entry of the proposed judgment;

(C) Require or otherwise mandate the employment or other hiring of, or the contracting with, personnel or other entities by a government agency in addition to the personnel or other entities employed or otherwise hired by, or contracted with or by the government agency;

(D) Require or otherwise mandate payment of a claim based upon a breach of contract by a government agency; or

(E) Declare an act of the Legislature unconstitutional and, therefore, unenforceable.

11. Plaintiffs' argument does not address the potential impact upon state funds if the insurance policy at issue is, in reality, a self-funded policy under which claims are paid from state funds rather than insurance company assets.

part, that "[n]otwithstanding any provision of law to the contrary, at least thirty days prior to the institution of an action against a government agency, the complaining party or parties *must* provide the chief officer of the government agency and the attorney general written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired." (Emphasis added). "Typically, the word 'must' is afforded a mandatory connotation." *Ashby v. City of Fairmont,* 216 W.Va. 527, 532, 607 S.E.2d 856, 861 (2004). Use of the word "must" does not imply an element of discretion. Notice is required to be filed prior to suit being initiated in the courts of this State. On this, the Legislature has spoken in plain and unambiguous terms. The question for us, therefore, becomes, what is the consequence of the failure to provide the mandatory notice?

In answering this question, we look to how other jurisdictions, both federal and state, have dealt with the failure to follow statutory pre-suit procedures applicable to actions against governmental entities for guidance.[12] Federal courts have consistently recognized that the prior filing of an administrative claim, including the exhaustion of administrative remedies, is a jurisdictional prerequisite to the filing of a federal court action under the Federal Tort Claims Act. *See, e.g., Celestine v. Mount Vernon Neighborhood Health Center,* 403 F.3d 76, 82 (2nd Cir.2005) (prior filing of proper administrative claim is a jurisdictional prerequisite which cannot be waived); *Cook v. United States,* 978 F.2d 164, 166 (5th Cir.1992) (proper notice of claim is jurisdictional prerequisite under Federal Tort Claims Act suit); *Cizek v. United States,* 953 F.2d 1232, 1233 (10th Cir.1992) (recognizing that because Federal Tort Claims Act operates as a waiver of sovereign immunity, its pre-suit notice provisions must be strictly construed, are jurisdictional and cannot be waived) (citations omitted); *Meridian Int'l Logistics, Inc. v. United States,* 939 F.2d 740, 743 (9th Cir.1991) (denial of prior administrative claim is jurisdictional limitation); *Henderson v. United States,* 785 F.2d 121, 123 (4th Cir.1986) (prior filing of administrative claim requirement is jurisdictional and cannot be waived); *Lykins v. Pointer, Inc.,* 725 F.2d 645, 646 (11th Cir.1984) (same); *Berlin v. United States,* 9 F.Supp.2d 648, 651 (S.D.W.Va.1997) (same).

Likewise, a number of state courts find the compliance with statutory pre-suit notice of claim provisions applicable to actions against a governmental entity to be a jurisdictional prerequisite. *See, e.g., Mesa County Valley Sch. Dist. v. Kelsey,* 8 P.3d 1200, 1203–4 (Colo.2000) (finding compliance with statutory notice of claim provision is jurisdictional prerequisite to claim asserted against state, its political subdivisions and employees); *Town of Wethersfield v. National Fire Ins. Co.,* 145 Conn. 368, 143 A.2d 454, 456 (1958) (provision of statutory notice is condition precedent to suit); *Sylvester v. Dept. of Transportation,* 252 Ga.App. 31, 555 S.E.2d 740, 741 (2001) (compliance with statutory notice provisions is a condition precedent to subject matter jurisdiction over suit); *Rodgers v. Martinsville Sch. Corp.,* 521 N.E.2d 1322 (Ind.Ct.App.1988) (failure to comply with statutory notice provisions is jurisdictional bar to suit against governmental entity); *Gessner v. Phillips County Comm.,* 270 Kan. 78, 11 P.3d 1131, 1134 (2000) (compliance with statutory presuit notice provision is condition precedent to filing claim against governmental entity); *Christopher v. State,* 36 Kan.App.2d 697, 143 P.3d 685, 691 (2006) (compliance with notice of claim statute is jurisdictional prerequisite which cannot be waived); *Mississippi Dept. of Pub. Safety v. Stringer,* 748 So.2d 662, 665 (Miss.1999) (timely, substantial compliance with notice of claim statute is jurisdictional condition precedent to action); *Wheeler v. McPherson,* 40 P.3d 632, 635 (Utah 2002) (compliance with statutory notice provisions is a prerequisite to vesting court with subject matter jurisdiction).

While not finding compliance with notice provisions to be a jurisdictional prerequisite, other courts deem such non-compliance with

12. West Virginia Code § 55–17–3(a) is not included within our Tort Claims Act, but is a separate statute of limited application. However, we find persuasive decisions by other jurisdictions discussing such pre-suit notification procedures in the context of their respective Tort Claims Acts.

statutory requirements to be a bar or defense to suit. *See, e.g., Cushman v. Tilton,* 652 A.2d 650, 651 (Me.1995) (failure to comply with statutory notice provision bars claim); *Naylor v. Minnesota Daily,* 342 N.W.2d 632, 634 (Minn.1984) (though not a jurisdictional bar, failure to file timely statutory notice may be used as defense to claim upon showing of prejudice); *University of Texas Southwestern Med. Center v. Loutzenhiser,* 140 S.W.3d 351, 365 (Tex.2004) (while lack of proper statutory notice did not deprive a court of subject matter jurisdiction based upon the specific statutory language utilized, it did operate as an absolute bar to an action brought under the Tort Claims Act); *Halberstam v. Commonwealth,* 251 Va. 248, 467 S.E.2d 783 (1996) (failure to strictly comply with statutory notice provisions bars action); *Duran v. Board of County Comm'rs,* 787 P.2d 971, 972 (Wyo.1990) (failure to comply with statutory notice provisions operates as absolute bar to suit).

■■■ Upon careful consideration of the above cited authorities from federal and state jurisdictions and in light of the Legislature's express purpose of protecting the public interest in enacting W. Va.Code § 55–17–3(a)'s notice provisions, we find the provision of statutory notice to be jurisdictional in nature. We are persuaded by the reasoning of those courts deeming such notice to be jurisdictional in light of principles of sovereign immunity. Accordingly, we now hold that compliance with the pre-suit notification provisions set forth in W. Va.Code § 55–17–3(a) (2002) is a jurisdictional pre-requisite for filing an action against a State agency subject to the provisions of W. Va.Code § 55–17–1, *et seq.* (2002).

To accept the circuit court's opinion that it has discretion to waive this mandatory notice would require us, in effect, to judicially repeal W. Va.Code § 55–17–3(a). In *Henderson,* the Fourth Circuit rejected an analogous argument that the filing of a state court claim could satisfy the requirement of a prior administrative claim to establish federal court jurisdiction. Therein, the Fourth Circuit stated:

> Finally, we are concerned about the practical impact of holding that the filing of a

state court suit satisfies the requirement of filing an administrative claim. Such a holding would be tantamount to judicial repeal of the provisions requiring the exhaustion of administrative remedies found in 28 U.S.C. § 2675. Whether a court holds that the filing of a state court suit against the individual employee obviates the need for filing an administrative claim, as the plaintiffs in *Meeker* [*v. U.S.,* 435 F.2d 1219 (C.A.8 1970)] and *Rogers* [*v. U.S.,* 675 F.2d 123 (C.A.6 1982)] claimed, or whether it holds that the filing of a state court suit satisfies that administrative requirement would seem to make little practical difference. In neither instance is a claim presented by the claimant to the appropriate federal agency as required by law.

*Henderson,* 785 F.2d at 125. Herein, the Legislature has enacted notice requirements for certain actions against executive branch agencies which may impact the public interest in order to provide adequate time for all appropriate governmental entities to act. In so doing, it has protected a claimant's interests by simultaneously extending the applicable statute of limitation when notice is properly provided. W. Va.Code § 55–17–3(a)(2). As no constitutional challenge has been made to this legislative enactment, this Court is unwilling to judicially repeal it by recognizing the discretion to waive clear and unambiguous statutory provisions. Dismissal is mandated because the plaintiffs' failure to comply with statutory notice mandates deprives the circuit court of jurisdiction over this matter.

## B.

### Application of the Savings Statute, W. Va.Code § 55–2–18

■■■ Having found that dismissal is required for failure to comply with the notice provisions contained within W. Va.Code § 55–17–3 due to a lack of jurisdiction, the question arises as to whether plaintiffs may invoke W. Va.Code § 55–2–18 to refile their action after compliance with W. Va.Code § 55–17–3. This question is easily answered in the affirmative after examination of the plain language of W. Va.Code § 55–2–18 and

Rule 41(b) (1998) of our *Rules of Civil Procedure.*

West Virginia Code § 55–2–18 provides:

(a) For a period of one year from the date of an order dismissing an action or reversing a judgment, a party may re-file the action if the initial pleading was timely filed and (i) *the action was involuntarily dismissed for any reason not based upon the merits of the action* or (ii) the judgment was reversed on a ground which does not preclude a filing of new action for the same cause.

(b) For purposes of subsection (a) of this section, a dismissal not based upon the merits of the action includes, but is not limited to:

(1) A dismissal for failure to post an appropriate bond;

(2) A dismissal for loss or destruction of records in a former action; or

(3) A dismissal for failure to have process timely served, whether or not the party is notified of the dismissal.

(Emphasis added). While W. Va.Code § 55–2–18(b) provides three examples of a dismissal not based upon the merits, Rule 41(b) of the *West Virginia Rules of Civil Procedure* is relevant to determine the scope of the Savings Statute's reach. Rule 41(b), entitled *Involuntary Dismissal; effect thereof,* provides, in pertinent part, "[u]nless the court in its order for dismissal provides otherwise, a dismissal under this subdivision and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction* or for improper venue, operates as an adjudication on the merits." (Emphasis added). Thus, under our *Rules of Civil Procedure,* a dismissal for lack of jurisdiction is not an adjudication on the merits. Reading Rule 41(b) in conjunction with W. Va.Code § 55–2–18(a)(i), leads us to the inescapable conclusion that the Savings Statute applies where an action is dismissed for failure to comply with the notice provisions of W. Va.Code § 55–17–3(a).

While we acknowledge and tend to agree with DEP's argument that application of the Savings Statute to permit re-filing thwarts the legislative intent behind the pre-suit notice requirement, the language chosen by the Legislature in enacting the Savings Statute compels this result.[13] The Legislature expressly provided in the Savings Statute that any action timely filed and not dismissed on the merits may refiled. The Legislature had the power to specifically exclude actions dismissed for failure to comply with the provisions of W. Va.Code §§ 55–17–1, *et seq.,* from scope of the Savings Statute. It did not do so. Where the Legislature itself has not acted, it is improper for this Court, under the guise of statutory interpretation, to amend legislative enactments in order to judicially impose upon the Legislature a result it did not intend. Therefore, we can not read into W. Va.Code § 55–2–18 an exception for actions dismissed for failure to comply with the provisions of W. Va.Code §§ 55–17–1, *et seq.*

## IV.

## CONCLUSION

Accordingly, we answer the re-formulated certified questions in the following manner:

1.  Is compliance with the pre-suit notification provisions set forth in W. Va.Code § 55–17–3(a) (2002) a jurisdictional prerequisite for filing an action in accordance with W. Va.Code § 55–17–1, *et seq.* (2002) against certain State entities?

ANSWER: YES.

---

**13.** We also note DEP's argument that the Savings Statute is inapplicable because the underlying action cannot be timely filed where there is no pre-suit notice. It appears from the limited record before this Court that the underlying action was filed in the Circuit Court of Logan County within the prescribed two year limitation period although the circuit court was without jurisdiction to proceed due to the lack of pre-suit notice. In *Tompkins v. Pacific Mut. Life Ins. Co.,* 53 W.Va. 479, 484, 44 S.E. 439, 441 (1903), the Court, after analyzing several cases, recognized that if an action is timely filed but dismissed for want of jurisdiction it should be considered timely filed for purposes of the Savings Statute. *See also, Siever v. Klots Throwing Co. of W. Va.,* 101 W.Va. 457, 132 S.E. 882, 885 (1926) (recognizing decision in *Tompkins* as standing for proposition that where action is originally timely filed but dismissed for want of jurisdiction, it may be refiled within one year pursuant to statute regardless of whether the statute of limitations had expired at the time of refiling).

2. May an action dismissed for failure to comply with the notice provisions of W. Va.Code § 55–17–3(a) (2002) be re-filed after expiration of the original statute of limitations pursuant to W. Va.Code § 55–2–18 (2001)?

ANSWER: YES.

Upon return of this matter to the Circuit Court of Kanawha County, the circuit court is directed to dismiss the instant action for lack of jurisdiction due to plaintiffs' admitted failure to comply with the notice provisions of W. Va.Code § 55–17–3(a).

Certified Questions Answered

ALBRIGHT, J., concurs in part, dissents in part and files opinion.

STARCHER, J., dissents and files opinion.

ALBRIGHT, Justice, concurring, in part, and dissenting, in part:

This case comes to us in the form of two certified questions arising in a civil action pending in the Circuit Court of Kanawha County.

In view of the decision of this Court to require the dismissal of the underlying action for failure of the Petitioners below to comply fully with West Virginia Code § 55–17–3(a) (2002) (Supp.2006), I concur in the further judgment of this Court permitting the underlying suit to be refiled after the expiration of the statute of limitations under the provisions of the savings statute, West Virginia Code § 55–2–18 (2001) (Supp.2006).

However, I vigorously dissent from the new point of law, stated in syllabus point three of the majority opinion, holding that the pre-suit notice to state officials required by West Virginia Code § 55–17–3(a) is *jurisdictional.*

As explained in the majority opinion, the constitutional principles I maintain are pivotal to a decision in this case were not addressed because the parties did not raise a constitutional challenge to the statute. While the general rule is that courts do not pass upon the constitutionality of a statute in such instances, the long-recognized exception to that rule is when "a decision upon that very point is necessary to the determination of the case." Syl. Pt. 1, *Edgell v. Conaway,* 24 W.Va. 747 (1884). This Court explained in *State v. Harrison,* 130 W.Va. 246, 43 S.E.2d 214 (1947), that "[t]his widely recognized principle is based upon the attitude of deference of the judiciary for the legislative department of the government." *Id.* at 249, 43 S.E.2d at 216. I can think of no more decisive reason to invoke the exception than when the legislative enactment being considered oversteps constitutionally defined bounds to the powers of the legislative branch.

The majority suggests that without a constitutional challenge by the parties, the only alternative remedy is, in effect, judicial repeal of the notice statute through recognition of discretion of the courts to waive the pre-suit notice provisions. While it is not entirely clear, that conclusion appears to rest on the determination that the notice requirements are jurisdictional in nature. I maintain that the better approach is to fashion a remedy for the absence of timely pre-suit notice that, in comity, recognizes and accommodates in most cases the desire of the Legislature to have notice of litigation given to its officers and to other affected state agencies before the state's interests are adversely affected by the litigation. In most instances, such an accommodation can be achieved by simply staying further action in the case (including suspending response times) until notice is given for the required period of time. However, in cases seeking to bar or postpone some projected state action alleged to pose imminent or irreparable harm to the complaining parties, there may be a legitimate need for swift, if temporary, immediate action without the required notice to state officials. To hold, as the majority does, that the statute under consideration constitutes a *jurisdictional* bar to all relief until the required notices are given and the stipulated times have elapsed is unwise and unnecessary.

A similar accommodation involving a pre-suit notice provision governing medical malpractice actions was crafted by this Court in *Hinchman v. Gillette,* 217 W.Va. 378, 618 S.E.2d 387 (2005). The resolution fashioned in *Hinchman* reflected a wise balance of the

prerogatives of the legislative and judicial branches of government without either declaring the notice provisions jurisdictional or refusing to accommodate the legislative will. In so doing, the right to citizens' access to the courts was expressly preserved. *Id.* Syl. Pt. 2, 217 W.Va. at 379, 618 S.E.2d at 388. The statutory pre-suit notice requirements examined in *Hinchman* were intended to resolve a legislatively defined problem of crisis dimension involving medical malpractice lawsuits. The legislative design was intended to curtail the number of lawsuits considered frivolous in order to ease a perceived economic crisis and to instill or renew public confidence in the skills and quality of medical services in the state. I note first that the statute in *Hinchman* dealt with suits grounded in the common law, over which the Legislature retains constitutional powers to enact statutory amendment, not extraordinary remedies. Moreover I note that in the statute under consideration here, the Legislature was not dealing with a perceived economic or social crisis as in *Hinchman*, but with the convenience of the state government in responding to litigation initiated by citizens seeking some kind of relief from the actions of that state government.

It is also worth noting a distinction between our Court system and that of the federal government. Federal courts' jurisdiction, with only a few exceptions, is derived from acts of Congress. The jurisdiction of our state courts comes from the state constitution directly, without legislative enactment except in those cases in which the Legislature chooses to enlarge, rather than restrict, that jurisdiction. The wisdom of those who drafted our state constitution in choosing to secure to our people the aid of the courts directly, rather than by the grace of the Legislature, ought to be respected. The opinion of this Court from which I here dissent fails to give full respect to that highly meaningful distinction.

The impact of the majority opinion is even more inappropriate in cases seeking extraordinary remedies. The jurisdiction of this Court and of the circuit courts to entertain suits seeking extraordinary remedies such as mandamus derives from Article VIII of the Constitution of this State *and is not subject to restriction by the Legislature.* While this Court has permitted the Legislature to set certain pre-conditions to the filing of suits seeking common-law damages for alleged malpractice by health care providers, treating the type of pre-conditions presently at issue as *jurisdictional* in cases seeking relief by way of one or another extraordinary remedy has potential for mischief that need not be chanced.

The course chosen by the majority operates to close the courthouse doors to citizens seeking prompt redress against the government despite the express constitutional guarantee that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, *shall* have remedy by due course of law...." W.Va. Const. art. III, § 17 (emphasis supplied). I firmly believe that this Court, giving due respect to our republican form of government, should never sanction a remedy that sets government above the people rather than as servant of the people. Indeed, this Court has historically respected and adhered to this tenet. *See* Syl. Pt. 2, *Ralston v. Town of Weston*, 46 W.Va. 544, 33 S.E. 326 (1899) ("The statute of limitations runs against the state and municipal corporations, as against individuals in similar cases."); Syl. Pt. 3, *City of Wheeling v. Campbell*, 12 W.Va. 36 (1877) ("The statute of limitations ... runs against a municipal corporation, the same as against a natural person."), *overruled on other grounds*.

Finally, we have reviewed the wealth of authority on which the majority bases its decision to find the pre-suit notice provision at issue to be a jurisdictional matter. In my estimation, the extensive discussion in the majority opinion regarding treatment by other jurisdictions of pre-suit notice statutes without comparatively examining those states' constitutional mandates and authority with ours has led to a questionable, if not faulty, conclusion.

Accordingly, I concur in that portion of the majority opinion allowing refiling of suit by application of the savings statute, but I respectfully dissent from the remainder of the

opinion, based upon my firmly rooted convictions.

STARCHER, Justice, dissenting:

This opinion holds that compliance with the notice provisions of *W.Va.Code*, 55–17–3(a) [2002] is a jurisdictional prerequisite. In other words, if a plaintiff doesn't give notice at least thirty days before filing a lawsuit against a state agency to the Attorney General and the "chief officer of the government agency"—so that the Speaker of the House and the President of the Senate may "forthwith" learn of the threatened litigation—then the courts of this state have no jurisdiction to hear the lawsuit.

I dissent from such a ridiculous holding. First and foremost, I dissent because the statute is plainly unconstitutional, violating every notion of separation of the powers constitutionally vested in each branch of government. Second, the cases cited as support for the opinion simply don't support the opinion—in fact, the cases suggest the exact opposite result. And not just a few of the cases. *All of them.*

I.

*W.Va.Code, 55–17–3(a) is unconstitutional*

I concede that the constitutionality of the statute was not challenged before this Court, but on remand I see nothing to stop the circuit court from refusing to apply the statute on constitutional grounds.

*W.Va.Code*, 55–17–3(a) is a flagrant violation of all notions of separation of powers. The Legislature cannot constitutionally pass a law that deprives the courts of jurisdiction over certain kinds of cases. Yet the majority's opinion suggests that the law may reach just that result.

The *West Virginia Constitution* states that "[t]he judicial power of the State shall be vested solely ... in the circuit courts," [1] and states that circuit courts

shall have original and general jurisdiction of all civil cases at law where the value or amount in controversy, exclusive of interest and costs, exceeds one hundred dollars unless such value or amount is increased by the legislature[.]

*Id.*, Art. VIII, § 6. The *Constitution* gives the Legislature only one opportunity to tinker with the civil case jurisdiction of the circuit court, and that is to increase the "amount in controversy" requirement. *Expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies when reading this section of the *Constitution*. The *Constitution* doesn't give the Legislature the power to limit a circuit court's civil case jurisdiction by imposing pre-suit notice requirements. *W.Va.Code*, 55–17–3(a) therefore violates section 6 of Article VIII of our *Constitution*, because the statute attempts to limit the civil case jurisdiction of the circuit courts.

The statute also violates section 1 of Article VIII of our *Constitution*, because it makes pre-suit notice to members of the Executive and the Legislative branches a prerequisite to filing a lawsuit against the State. This section of the *Constitution* places all judicial power in the courts—yet the statute seizes for the Executive and the Legislative branches a measure of authority over the operation of the Judiciary.

The members of the majority—as they have done in the past—continue to abdicate the judicial power of the courts to the Executive and Legislative branches. Piece by piece, bit by bit, the Legislature has gnawed away at the Court's constitutional duties, responsibilities and powers. The courts were designed by the Founding Fathers—of our Nation and our State—to be a check and a balance against the powers of the Executive and Legislative branches. I dissent because the majority opinion gives the green light to the Legislature to continue passing laws that minimize the Judiciary's role in government, and that limit the people's ability to access the courts to receive justice.

II.

*The Majority Opinion Mis–Cites Authority*

As its primary authority, the majority opinion "look[s] to how other jurisdictions, both federal and state, have dealt with the failure to follow statutory pre-suit procedures applicable to actions against governmental

---

1. *West Virginia Constitution*, Art. VIII, § 1.

entities for guidance." 220 W.Va. at 418, 647 S.E.2d at 854. The opinion lists "a number" of state and federal courts that have *interpreted* pre-suit notice statutes, and have found that compliance with pre-suit notice of claim provisions is "a jurisdictional prerequisite." The opinion implies that these other courts read various vague statutes—statutes like *W.Va.Code*, 55–17–3(a)—and interpreted a jurisdictional component into the statute. Then the opinion relies upon these "above cited authorities from federal and state jurisdictions" to "find" in *W.Va.Code*, 55–17–3(a) "the provision of statutory notice to be jurisdictional in nature." 220 W.Va. at 419, 647 S.E.2d at 855.

So why do I have a problem with this tried-and-true system of opinion writing? The reason those other state courts (and the federal courts) found their particular notice statutes to be jurisdictional is obvious: unlike West Virginia, those states' statutes *explicitly make pre-suit notice jurisdictional.* The majority opinion does not make this clear, and never points out that West Virginia's statute is totally different from all those other statutes.

In fact, none of the cases from federal and other state jurisdictions quoted by the majority opinion ever "interprets" a statute. The majority opinion quotes cases from state courts in Colorado, Connecticut, Georgia, Indiana, Kansas, Maine, Mississippi, Utah, Virginia, Wyoming, as well as district and federal circuit courts of the United States, as examples of courts consistently recognizing that the filing of pre-suit notice in an action against a governmental entity is a jurisdictional prerequisite.[2] The cases interpret nothing, but rather apply clear statutory language making pre-suit notification a jurisdictional prerequisite.

2. The statutes behind the cases quoted by the opinion say the following (with emphasis added):

Colorado: "Compliance with the provisions of this section shall be a *jurisdictional prerequisite* to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action." *C.R.S.A.,* § 24–10–109(1) [1992].

Connecticut: *"No action for any such injury shall be maintained* ... unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation." *C.G.S.A.,* § 13a–149 [1986].

Georgia: "No action against the state under this article shall be commenced and the courts shall have *no jurisdiction* thereof unless and until a written notice of claim has been timely presented to the state as provided in this subsection." *Ga.Code. Ann,* § 50–21–26(a)(3) [2000].

Indiana: "[A] claim against the state is *barred* unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs." *Indiana Code,* § 34–13–3–6 [1998].

Kansas: "All claims against a municipality must be presented in writing with a full account of the items, and *no claim shall be allowed* except in accordance with the provisions of this section.... *No person may initiate an action* against a municipality unless the claim has been denied in whole or part." *Kan. Stat. Ann.,* § 12–105b [2004].

Maine: *"No claim or action shall be commenced* against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with." *14 M.R.S.A* § 8107(4) [2001].

Mississippi: *"After all procedures within a governmental entity have been exhausted,* any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim[.]" *Miss.Code Ann.,* § 11–46–11(1) [2002].

Utah: "A claim against a governmental entity ... *is barred* unless notice of claim is filed ... within one year after the claim arises." *Utah Code Ann.* § 63–30d–402 [2004].

Virginia: "Every claim cognizable against the Commonwealth ... shall be *forever barred* unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim[.]" *Va. Stat.* § 8.01–195.6 [2007].

Wyoming: "No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing[.]" *Wyo. Stat. Ann.,* § 1–39–113 [1997]. The *Wyoming Constitution,* Article 16, § 7 also requires notice: "No money shall be paid out of the state treasury ... and *no bills, claims, accounts or demands against the state* ... shall be ... *allowed* or paid until a full itemized statement in writing, certified to under penalty of perjury, shall be filed with the officer or officers whose duty it may be to audit the same."

United States: *"An action shall not be instituted* upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency[.]" 28 U.S.C.A. § 2675(a) [1966].

The language of the statutes relied upon in the majority opinion simply is not found in West Virginia's statute. *W.Va.Code,* 55–17–3(a) is vastly different from all of the state and federal statutes relied upon by the majority opinion, and says absolutely nothing about pre-suit notification being jurisdictional. The majority opinion didn't "find" notice to be a jurisdictional prerequisite; the majority wrote it into the statute on a whim.

Furthermore, the opinion says that while some courts find their state's pre-suit notice statutes are not jurisdictional, those "other courts deem such non-compliance with statutory requirements to be a bar or defense to suit." 220 W.Va. at 418–19, 647 S.E.2d at 854–55. In reality, those courts said something directly opposite. Those courts actually do appear to interpret a vague state law, but they interpret their statutes to mean that plaintiffs can still proceed with their lawsuit even without giving pre-suit notice. For example, Minnesota held in *Naylor v. Minnesota Daily,* 342 N.W.2d 632, 634 (Minn.1984) that the state notice statute was not a jurisdictional bar to suit. The Minnesota court found that if a plaintiff fails to give notice, a jury "could consider the effect of the failure to receive notice in determining liability or damages. But the case may not be dismissed." Similarly, the court in *University of Texas Southwestern Medical Center v. Loutzenhiser,* 140 S.W.3d 351 (Tex.2004) said that "the failure to give notice of a claim ... does not deprive a court of subject matter jurisdiction over an action on the claim."

I would have written the majority opinion to hold that *W.Va.Code,* 55–17–3(a) is *not* a jurisdictional bar to suit, and that the failure to give pre-suit notice does not deprive a court of subject matter jurisdiction. However, notice by the plaintiff to the various state agencies / actors—presuming such a notice requirement isn't flagrantly unconstitutional—should be compelled before the case proceeds further, and the failure to give pre-suit notice can be considered by a jury in determining liability or damages.

I therefore respectfully dissent.