STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

Sarah E. Magee and Michael T. Magee,
Plaintiffs Below, Petitioners

**FILED**

**November 1, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 17-0008 (Kanawha County 14-C-2234)

Racing Corporation of West Virginia d/b/a
Mardi Gras Casino & Resort, a Michigan corporation,
Dallas Nelson, City of Nitro, Nitro Police Department,
and C. A. Greene,
Defendants Below, Respondents


MEMORANDUM DECISION

Petitioners Sarah E. Magee and Michael T. Magee (hereinafter collectively "the Magees") appeal the December 6, 2016, order of the Circuit Court of Kanawha County dismissing their complaint against respondents Racing Corporation of West Virginia d/b/a Mardi Gras Casino & Resort, Dallas Nelson (hereinafter collectively "the Mardi Gras defendants"), the City of Nitro, Nitro Police Department, and C. A. Greene (hereinafter collectively "the Nitro defendants") pursuant to West Virginia Rule of Civil Procedure 12(b)(6) for failure to file their claims against these respondents within the statute of limitations. The Magees contend that the tolling provision contained in the pre-suit notice requirements of West Virginia Code § 55-17-3(a)(2) (2008) serves to toll the statute of limitations as against all named defendants, not just those defendants entitled to pre-suit notice. By way of cross-assignment of error, the Nitro defendants assert that the circuit court erred in failing to dismiss the Magees' case for failure to prosecute.[1]

This Court has considered the parties' briefs, oral arguments, and the record on appeal. The facts and legal arguments are adequately presented and upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. Factual and Procedural History

On December 2, 2012, the Magees were overnight guests at a Christmas party at the Mardi Gras Casino in Cross Lanes, West Virginia. Mrs. Magee went to the restroom,

---

[1] The Magees are represented by Shannon M. Bland, Esq. The Mardi Gras defendants are represented by Benjamin Bailey, Esq., Maryl C. Sattler, Esq., and J. Zak Ritchie, Esq. The Nitro defendants are represented by Johnnie E. Brown, Esq., James A. Muldoon, Esq., and Christopher C. Ross, Esq.

escorted by her husband, who waited outside. While he was waiting outside, Mr. Magee was allegedly approached by Dallas Nelson, a casino security guard, who told him he had to leave the casino. When Mrs. Magee emerged, Mr. Nelson allegedly refused to allow the Magees to return to their room and contacted Nitro Police Department. When Lt. C. A. Greene of the Nitro Police Department arrived, he allegedly also refused to allow the Magees to return to their room and requested that Mr. Magee undergo a breathalyzer test. Mr. Magee refused and was arrested, along with Mrs. Magee, who "objected" to her husband's treatment. Both were taken to the Nitro Police Department; Mr. Magee alleges he was pepper sprayed and struck with a taser twice. Both were then taken to the South Central Regional Jail, where Mrs. Magee was allegedly made to shower in view of other inmates and jail personnel.

On November 21, 2014, the Magees' counsel sent a "Notice of Claim" to Nitro Police Department[2] and the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") pursuant to West Virginia Code §§ 55-17-3 *et seq.*, requiring pre-suit notice to "government agencies." The Notice was received on November 24, 2014. On December 23, 2014—twenty-one days *after* the two-year statute of limitations[3]—the Magees filed suit against the Mardi Gras defendants, the Nitro defendants, and the WVRJCFA. In April, 2015, the Mardi Gras defendants filed a motion to dismiss on statute of limitations grounds; no response was filed. No additional activity occurred thereafter and, on July 5, 2016, a notice of involuntary dismissal was issued by the circuit clerk, providing the Magees with fifteen days to demonstrate good cause why the case should not be dismissed pursuant to West Virginia Rule of Civil Procedure 41(b). In response, the Magees filed a motion to reinstate containing three sentences, stating they were "prepared to move forward with this matter." Each defendant below filed a response resisting the motion to reinstate, arguing that no good cause was articulated in the motion. The Magees then filed a reply stating simply that Mrs. Magee gave birth in March, 2016 to her third child and due to the upsetting nature of the case, she felt it was wise not to "actively pursue" the litigation during that time because her pregnancy was "high risk."

The circuit court held a hearing on November 10, 2016, on both the motion to reinstate and motion to dismiss. Although the circuit court chastised the Magees' counsel for not communicating about the basis for lack of prosecution of the case, it ruled that the Magees had demonstrated good cause and the case would not be dismissed. The circuit court then took up the motion to dismiss on statute of limitations grounds. The Magees argued that the tolling provision of West Virginia Code § 55-17-3(a)(2) applied to toll the statute of limitations as to all

---

[2] Despite the Magees' pre-suit notice to the City of Nitro, it is not a "government agency" as defined by West Virginia Code § 55-17-2(2) (2002): "'Government agency' means a constitutional officer or other public official named as a defendant or respondent in his or her official capacity, or a department, division, bureau, board, commission or other agency or instrumentality *within the executive branch of state government* that has the capacity to sue or be sued[.]" (emphasis added).

[3] Although the Magees' claims are largely grounded in negligence and therefore subject to a two-year statute of limitations, their claim of false arrest is subject to a one-year statute of limitations, which had obviously likewise lapsed by the time of their filing.

named defendants where a pre-suit notice was required as to *any* defendant. The circuit court stated that it found no basis upon which to extend the statutory tolling provision to non-State governmental entities and therefore, the Magees had failed to file their complaint within the applicable statute of limitations. Accordingly, the circuit court dismissed the complaint as against all defendants except the WVRJCFA. This appeal followed.

## II. Standard of Review

It is well-established that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Moreover, since this case involves the applicability of the tolling provision of West Virginia Code § 55-17-3, a *de novo* standard is equally applicable: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). As to the Nitro defendants' cross-assignment of error regarding failure to prosecute: "We review a circuit court's order dismissing a case for inactivity pursuant to Rule 41(b) under an abuse of discretion standard." *Caruso v. Pearce*, 223 W. Va. 544, 547, 678 S.E.2d 50, 53 (2009). With these standards in mind, we proceed to the parties' arguments.

## III. Discussion

The issue presented herein is straight-forward: whether the thirty-day tolling provision of West Virginia Code § 55-17-3(a)(2) operates to toll the statute of limitations as to *all* named defendants or only the defendant(s) requiring pre-suit notice under the statute. West Virginia Code § 55-17-1 *et seq.* was enacted in 2002 and is entitled "Procedures for Certain Actions on Behalf of or Against the *State*." (emphasis added). Its statement of purpose observes that

> there are numerous actions, suits and proceedings filed against state government agencies and officials that may affect the public interest. Depending upon the outcome, this type of litigation may have significant consequences that can only be addressed by subsequent legislative action. . . . Government agencies and their officials require more notice of these actions and time to respond to them and the Legislature requires more timely information regarding these actions, all in order to protect the public interest.

W. Va. Code § 55-17-1(a). Accordingly, at least thirty days prior to suing a State agency or official, the plaintiff must provide written notice by certified mail, of the claim and relief sought. W. Va. Code § 55-17-3(a)(1). Importantly,

> [i]f the written notice is provided to the chief officer of the government agency as required by subdivision (1) of this subsection, *any applicable statute of limitations is tolled for thirty days from the date the notice is provided* and, if received by the

3

government agency as evidenced by the return receipt of the certified mail, for thirty days from the date of the returned receipt.

W. Va. Code § 55-17-3(a)(2) (emphasis added).

The statute of limitation applicable to the Magees' claims lapsed on December 2, 2014, yet they did not file their complaint until December 23, 2014. While this filing was before the 30-day tolling provision as to the WVRJCFA, it was twenty-one days *after* the statute lapsed as to the Mardi Gras defendants and Nitro defendants. The Magees argue that the language of the statute stating that "*any* applicable statute of limitations is tolled" should be construed to mean that, where a defendant requiring pre-suit notice under the statute is named, the applicable statute of limitations as to *any* defendant is tolled. *Id.* (emphasis added). The Magees argue further that to permit the tolling as to one, but not all, defendants would necessarily result in "multiple fragmented filings" and piecemeal litigation. Petitioners cite no caselaw in support of their reading of the statute.

The Mardi Gras and Nitro defendants counter that the statute governs actions against "government agencies" as defined therein and therefore neither the statute, nor its tolling provisions in particular, apply to defendants which do not meet that definition. The Mardi Gras and Nitro defendants collectively assert that petitioners have options to avoid piecemeal litigation: either provide pre-suit notice at least thirty days before the statute of limitations runs as to the non-"government agencies" or, if filing at the close of the statute of limitations, simply amend the complaint thirty days later to add the "government agencies." They note that the issue with differing limitations periods for multiple defendants bemoaned by the Magees is no different than a situation where a plaintiff asserts various claims, each of which has a differing limitations period. In that instance, a plaintiff must timely file before the lapse of the earlier limitations period. Finally, respondents cite one extra-jurisdictional case which has addressed this issue, *Ganser-Heibel v. Chavallo Complex, LLC*, 293 P.3d 1234 (Wash. Ct. App. 2013). Finding that its similarly worded pre-suit notice statute "limits its provisions to tort damage claims against local government entities," the *Ganser-Heibel* court held that its tolling period did not toll the statute as to "private" parties. *Id.* at 1235-36.

This Court has only previously addressed this statute once, determining that pre-suit notice is jurisdictional. *See Motto v. CSX Transp., Inc.*, 220 W. Va. 412, 647 S.E.2d 848 (2007). However, with respect to statutes of limitation in general, the Court has held:

Statutes of limitation are statutes of repose and the legislative purpose is to compel the exercise of a right of action within a reasonable time; such statutes represent a statement of public policy with regard to the privilege to litigate and are a valid and constitutional exercise of the legislative power.

Syl. Pt. 1, *Stevens v. Saunders*, 159 W.Va. 179, 220 S.E.2d 887 (1975). Moreover, "[t]he plaintiff or his attorney bears the responsibility to see that an action is properly and timely instituted." Syl. Pt. 4, *Id.* In sum, the Court has stated as follows regarding statutes of limitations:

4

[S]tatutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself *strictly within some exception.* It has been widely held that such *exceptions "are strictly construed* and are not enlarged by the courts upon considerations of apparent hardship." Finding that the plaintiff had failed to satisfy the requirements of any established exceptions to the statute of limitations, we further stated that "[d]efendants have a right to rely on the certainty the statute [of limitations] provides, and adoption of the rule plaintiff urges would destroy that certainty." Lastly, we concluded that "[b]y strictly enforcing statutes of limitations, we are both recognizing and adhering to the legislative intent underlying such provisions."

*Perdue v. Hess*, 199 W. Va. 299, 303, 484 S.E.2d 182, 186 (1997) (citations and internal quotations omitted) (emphasis added).

Moreover, with respect to statutory interpretation, this Court has held that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).  In that regard,

[i]n the construction of statutes, it is the legislative intent manifested in the statute that is important and such intent must be determined primarily from the language of the statute. It is the duty of the courts to give a statute the interpretation called for by its language when this can reasonably be done; and the general rule is that no intent may be imputed to the legislature other than that supported by the face of the statute itself.

*State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 144–45, 107 S.E.2d 353, 358 (1959).  Significantly, "a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly."  Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975).

The Magees provide no basis upon which this Court may presume to extend the tolling provision of West Virginia Code § 55-17-3(a)(2) beyond the language and intention of the statute.  Without question, the statute was enacted expressly to create additional notice and opportunity for the Legislature to deal with claims against "government agencies," as defined in the statute.  The tolling provision serves merely to compensate plaintiffs for any shortening of the applicable statute of limitations occasioned by the pre-suit notice to such agencies.  There is nothing within the language of the statute to suggest that the tolling provisions were intended to apply to all named defendants and certainly isolation of the word "any" to reach such a conclusion violates our canons of statutory construction.  Because the statute clearly applies to only "government agencies" as defined therein and its tolling provisions operate exclusively to

compensate for the additional notice required in the statute, we find that the circuit court properly dismissed the Magees complaint as against the Mardi Gras and Nitro defendants.[4]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: November 1, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[4] Because of our resolution of the threshold issue raised by the Magees, we find it unnecessary to reach the Nitro defendants' cross-assignment of error.

6